PERRY HEATH, *Appellant,* v. THE CITY OF IOLA *et al.,*
*Appellees.*

No. 16,666.

### SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS—*Grants of Power—Statutory Con-
struction.* Where an express provision of the statute giving
cities of the second class authority to require the residents to
perform labor on the streets is repealed, general grants of
power are not readily to be construed as conferring the same
right by implication.

2. —————— *Road Tax—Withdrawal of Power from Certain Classes
of Cities.* The amendment of the statute (Gen. Stat. 1901,
§ 6031) making each incorporated city "of more than six hun-
dred inhabitants" a road district, by striking out the words
quoted and inserting "of the third class" (Laws 1907, ch. 295,
§ 1), indicated a legislative purpose to withdraw cities of the
first and the second class from the operation of that provision.

3. —————— *Power Not Restored by Subsequent Legislation.* The
provision of the law of 1909 (Laws 1909, ch. 198, § 8) making
all male residents of the state between certain ages amenable
to the road tax therein referred to, being essentially a re-
enactment of the old law, did not indicate any change of legis-
lative policy in that regard.

Appeal from Allen district court; OSCAR FOUST,
judge. Opinion filed November 6, 1909. Reversed.

*Frank R. Forrest,* and *H. A. Ewing,* for the appel-
lant; *Ritter & Forrest,* and *Ewing, Gard & Gard,* of
counsel.

*Travis Morse,* for the appellees; *Morse & Pees,* of
counsel.

The opinion of the court was delivered by ·

MASON, J.: In July, 1909, a city of the second class
passed an ordinance imposing a road tax payable in
work, the refusal to perform which was made punish-
able as a misdemeanor. An injunction was brought to
restrain proceedings under the ordinance, on the ground

that it was void because not authorized by the statute. The district court sustained a demurrer to the petition, and the plaintiff appeals. The sole question presented is whether, under the existing laws, the city had the power to pass such an ordinance.

Prior to 1907 the statutes contained the following provisions, which clearly authorized a city of the second class to require its residents to perform labor upon the streets:

"All male persons between twenty-one and forty-five years of age, who have resided thirty days in this state, who are capable of performing labor on public highways, and who are not a township charge, shall be liable each year to perform two days' work of eight hours each on the public roads, under the direction of the road overseer within whose district they respectively reside, or furnish a substitute to do the same, or pay the sum of one dollar and fifty cents per day to said road overseer, who shall receipt for the same, and expend it in repairs on the public roads within his district." (Gen. Stat. 1901, § 6033.)

"Each incorporated city of more than six hundred inhabitants shall constitute a separate road district, and the corporate authorities of such corporation shall have power to appoint a road overseer for such corporation, fix his term of office and compensation, and remove him from office for any misconduct, . . . and any such city shall have the power to pass any by-law or ordinance necessary to carry out fully the provisions of this act." (Gen. Stat. 1901, § 6031.)

In 1907 section 6031 was amended by striking out "each incorporated city of more than six hundred inhabitants" and inserting in lieu thereof "each incorporated city of the third class." (Laws 1907, ch. 295, § 1.) There seems no escape from the conclusion that this change deprived cities of the second class of the power they had possessed under the earlier statute. The power is one not readily implied from mere general provisions. (27 A. & E. Encycl. of L. 916.) But if the ordinary rule of interpretation were otherwise it could not well be applied here. The legislature had its at-

tention directed to the very matter involved. A special enactment was made covering the subject. The repeal of this enactment must be deemed not only a withdrawal of the authority thereby expressly granted but in effect a denial that a like authority was conferred elsewhere by implication, for it evidences a legislative policy unfavorable to the existence of that particular power. (*John P. Galloway v. Town of Tavares,* 37 Fla. 58; 28 Cyc. 266.)

In 1909, among other changes in the road laws, section 6033 was amended to read as follows:

"All male persons between twenty-one and fifty years of age who have resided thirty days in this state and who are not a public charge shall be liable each year to pay the sum of three dollars to the township highway commissioner or to the road overseer of his district, who shall receipt for the same and account therefor to the said commissioners, and the same shall be expended on repairs on the public roads within the district in which the persons live. And all moneys so received shall be paid over to the township highway commissioners or proper officer of the city in which the person lives, to be expended as above provided; unless the commissioners of roads and highways shall when they meet recommend that all such male persons shall perform two days' work, or one day's work with a team, upon the highways, in lieu of said three dollars, in which event all such persons shall be liable each year to perform two days' work of eight hours each or one day's work with team on the public roads, under the direction of the road overseer within whose district they may respectively reside, or furnish a substitute to do the same, or pay the sum of three dollars." (Laws 1909, ch. 198, § 8.)

The provision making all male residents of the state between certain ages amenable to the statute, being essentially a reënactment of the old law, does not indicate any change of policy in that regard. The provisions regarding cities have a field of operation, since cities of the third class are affected by them. We discover in the legislation of 1909 nothing to indicate a

restoration of the former plan of constituting cities of the first and the second class road districts.

Were it not that the enrolled bill is practically unassailable evidence of the action of the legislature, the senate and house journals would afford convincing proof that section 6031 as amended in 1907 in fact covered cities of all classes, not using the phrase "of the third class" at all. That was the form in which the bill passed both houses, according to the journals. (Senate Jour. p. 492; House Jour. p. 828.)

The judgment is reversed and the cause remanded, with directions to overrule the demurrer to the petition.