J. W. SHANE et al., *Appellants*, v. THE CITY OF HUTCH-
INSON et al., *Appellees*.

No. 18,260.

SYLLABUS BY THE COURT.

1. POLL TAX—*In Cities of First Class—Not Collectable.* The
legislature having passed a separate act showing a plain in-
tent to leave cities of the first class out of the operation of
the law authorizing the collection of a poll tax for road pur-
poses, and having made such act, without substantial change
of language, a section of a general enactment passed later in
the same session, must be deemed not to have intended to
restore to such cities the authority to collect such tax, not-
withstanding other expressions elsewhere in the same act, if
considered alone, might seem to indicate such a purpose.

2. ——— *Statutes* — *"Uniformity in Taxation."* A statute
which exempts residents of cities of the first class from the
operation of a statute imposing a poll tax for road purposes.
does not violate the rule requiring uniformity in taxation, nor
result in a denial of the equal protection of the laws.

Appeal from Reno district court. Opinion filed No-
vember 9, 1912. Reversed.

*Lee Monroe, W. S. Roark,* and *Carr W. Taylor,* all of
Topeka, for the appellants.

*Walter F. Jones,* of Hutchinson, for the appellees.

The opinion of the court was delivered by

MASON, J.: An action was brought to restrain the
enforcement of an ordinance for the collection of a poll
tax for road purposes. A demurrer to the petition was
sustained and the plaintiffs appeal. The only question
involved is whether the statute as it now exists au-
thorizes a city of the first class to enforce the collection
of such a tax. To decide this requires a review of the
legislation on the subject. A provision of the General
Statutes of 1868, which has never been expressly re-
pealed, required each township to be divided by the
trustee into road districts. (Gen. Stat. 1909, § 9584,

subdiv. 1.)   The general road law of 1874 contained two sections which remained unchanged until 1907, portions of them reading thus:

"Each incorporated city of more than six hundred inhabitants shall constitute a separate road district, and the corporate authorities of such corporation shall have power to appoint a road overseer . . . and any such city shall have the power to pass any by-law or ordinance necessary to carry out fully the provisions of this act."   (Laws 1874, ch. 108, § 16.)

"All male persons between twenty-one and forty-five years of age, who have resided thirty days in this state, who are capable of performing labor on public highways, and who are not a township charge, shall be liable each year to perform two days' work of eight hours each on the public roads, *under the direction of the road overseer within whose district they may respectively reside,* or furnish a substitute to do the same, or pay the sum of one dollar and fifty cents per day to said road overseer, who shall receipt for the same, and expend it in repairs on the public roads *within his district.*"   (Laws 1874, ch. 108, § 18.)

Doubtless cities of less than 600 inhabitants, being cities of the third class, would be deemed to form a part of the township in which they were situated, for the purpose of this statute, so the operation of section 18 was state wide.   In 1907 section 16 was amended by striking out "each incorporated city of more than six hundred inhabitants," and inserting in lieu thereof "each incorporated city of the third class."   (Laws 1907, ch. 295, § 1.)   It has been held that this change removed cities of the first and second class from the operation of section 18, and that this form of road tax remained uncollectable in such cities, notwithstanding the reënactment of that section in 1909 incidental to various amendments which are not important in this connection.   (*Heath v. Iola,* 81 Kan. 177, 105 Pac. 32.)

In 1911 section 16 was amended by making the first clause read "each incorporated city of the second and third class shall constitute a separate road district."

(Laws 1911, ch. 251, § 1.) While some minor changes were also made it is perfectly obvious that the purpose of this amendment was to make the inhabitants of cities of the second class subject to the road tax. It is also clear that the legislature had before it at the same time the proposition to restore the old law by making it extend as well to cities of the first class, and deliberately refused to take that action. This appears from the fact that the measure as introduced, and as passed by the senate, undertook to make every incorporated city a separate road district (Senate Journal, 1911, pp. 29, 135), and was amended by the house of representatives so as to exclude cities of the first class (House Journal, 1911, p. 537). It is beyond controversy that when the act became a law (March 2, 1911) cities of the second and third class were authorized to enforce the collection of the road tax, and those of the first class were not. The serious question is as to the effect of a subsequent enactment. At the same session of the legislature an act was passed which was approved by the governor March 8, and became effective upon its publication in the statute book of that year. It was a revision of the entire road law, and superseded practically all existing statutes on the subject. (Laws 1911, ch. 248.) So far as relates to the matter in hand it consisted of amendments of previously existing sections, and not of new enactments. The original section 16 of the law of 1874, making certain cities road districts, appeared as section 15, in substantially the same from in which it had just been passed as a separate act, except that for the former term "road overseer" was substituted in two instances "street commissioner" and in a third "township trustee." The original section 18, as amended in 1909, containing the provision making all male inhabitants of the state between certain ages liable for the tax, was re-enacted as section 36, the only change of present importance being this: the former law provided that the proceeds of the tax should be expended in improving the

roads *in the district* of the taxpayer's residence; the new law says they shall be expended on the roads within the *township or city* within which he lives. In behalf of the city this argument is made: so long as the law declared the tax should be expended only in the *road district* in which it was collected, the withdrawal of certain cities from those classified as constituting such districts might well be interpreted as taking them out of the operation of the statute; but now that the fund is made expendable in the city or township the broad language of the act makes it applicable throughout the state, in cities of the first class as well as elsewhere, although they do not constitute road districts. The argument is plausible and might be sound if the act were to be construed as an entirely new measure, no regard being had as to its history. We think the more reasonable view to be this: in substituting the phrase "city or township" for "road district" the legislature designed merely to do away with any subdivision of townships into road districts—practically to make each township (as well as each city to which the act applied) a road district; the question of what cities should be affected was not then under consideration. The language of the earlier act of 1911, which was plainly chosen with the very purpose of excluding cities of the first class from the operation of the road-tax law, was preserved in the later enactment of the same session without material change. If the intention had been to effect a reversal of policy in this regard it seems certain that this language, having reference to that particular subject, would have been altered in accordance with that purpose. The language must be deemed to have the same meaning in the reënactment that it had when originally adopted. Indeed, it is difficult to assign to it any other practical purpose than to indicate in what cities the road tax shall be collectable.

The suggestion is made that if the law does not apply to cities of the first class it violates the constitutional

requirement that the rate of assessment and taxation must be uniform. (Const. Art. 11, § 1.) That provision is not applicable to this form of taxation. (*Comm'rs of Ottawa Co. v. Nelson,* 19 Kan. 234, 241; *In re Dassler, Petitioner,* 35 Kan. 678, 684, 12 Pac. 130; *The State, ex rel., v. City of Topeka,* 36 Kan. 76, 85, 12 Pac. 310; 1 Elliott on Roads and Streets, 2d ed., § 480.) It is said that poll taxes, not being laid upon property, are not within constitutional requirements as to equality and uniformity, unless by reason of an arbitrary exemption of a certain class of persons. (37 Cyc. 766, 767.) Any exemption founded upon a reasonable classification is unobjectionable. (Note, 13 L. R. A., n. s., 901.) It has also been said (speaking of an ordinary property tax for road purposes) that the legislature may grant exemption to persons in cities, but only in case an equivalent burden be imposed upon them for the maintenance of their streets. (27 A. & E. Encycl. of L. 915.) Counsel for the city argues that the residents of cities of the first class can not be exempted from the operation of the law imposing a poll tax for road purposes, inasmuch as the legislature has not imposed any equivalent burden upon them. The system of caring for the streets of a city of the first class differs from that by which highways are kept in repair in other cities and in townships. There is a reasonable basis for a classification, giving the poll tax a place in one system and not in the other. The matter is one upon which the decision of the legislature is final. It is not necessary, in order to sustain a statute exempting residents of a city of the first class from liability for such a tax, that the court should be able to find that they are under some specific compensating burden. (*State v. Sharp,* 125 N. C. 628, 34 S. E. 264, 74 Am. St. Rep. 663; *State v. Wheeler,* 141 N. C. 773, 53 S. E. 700, 115 Am. St. Rep. 700, 5 L. R. A., n. s., 1139.)

The judgment is reversed and the cause remanded with directions to overrule the demurrer to the petition.