THE CITY OF KANSAS CITY, KANSAS, *Appellee,* v.
SAMUEL STEWART, as County Treasurer, etc., *Appellant.*

No. 18,979.

SYLLABUS BY THE COURT.

1. TAXATION—*City Taxes—Disposition of Penalties and Rebates
—County Fund.* The provision of the act in relation to the
collection of taxes, that "all penalties shall be credited to the
county fund, and all rebates charged to that fund," means
that the rebates shall be charged to the county fund; and an
amendment by implication which requires penalties on city
taxes to be paid to the city does not prevent the rebates on the
same tax being charged to the county.

2. —— *Legislative Power to Dispose of Rebates.* The legisla-
ture has power to require that rebates granted on taxes laid
by cities, townships and school districts shall be charged to
the county.

3. —— *Statute Relating to Penalties and Rebates—Not Un-
constitutional.* A statute requiring all rebates to be charged
to the county fund and all penalties to be credited to that
fund, except those accruing to the taxes of cities of the first
class, which shall be paid to the city, does not violate the pro-
vision of the state constitution that a tax shall be applied only
to the object in pursuance of which it is levied.

4. —— *Same.* Such a statute does not violate the fourteenth
amendment to the federal constitution by depriving any per-
son of property without due process of law, or by denying to
any person the equal protection of the law.

Appeal from Wyandotte district court, division No.
3; HUGH J. SMITH, judge. Affirmed.

*L. W. Keplinger,* and *C. W. Trickett,* both of Kansas
City, for the appellant.

*James F. Getty,* and *R. J. Higgins,* both of Kansas
City, for the appellee.

The opinion of the court was delivered by

MASON, J.: The city of Kansas City, Kansas, brought
mandamus against the treasurer of Wyandotte county,
to require him to pay money over to the city in accord-

ance with the terms of certain statutes. Judgment was rendered for the plaintiff, and the defendant appeals.

The question in dispute concerns the disposition of the penalties imposed by law for delinquency in the payment of taxes levied by and for the city. In substance it is this: Is the county required to reimburse a city of the first class for the amount by which the taxes collected for the city are reduced by rebates granted for prompt payment, and at the same time to pay over to the city the amount collected as penalties for delay in the payment of taxes levied by the city, while in the case of taxes levied by cities of the second and third classes, and by townships and school districts, the rebates are charged to the county and the penalties credited to it?

In 1874 a system of tax collection was adopted (Laws 1874, ch. 131, § 1) by which one-half of a tax was made nominally due on December 20, and the other half six months later. If the whole tax was paid by December 20 a rebate of five per cent was allowed on the half due in June. If none of the tax was paid until after December 20, the whole amount became due and a penalty of five per cent was added. A like penalty was added in March, and again in June, if the delinquency was continued. This system remains in force, the March penalty, however, having been eliminated. (Gen. Stat. 1909, § 9428.) This proviso of the present statute was added in 1876: "*Provided,* all penalties shall be credited to the county fund, and all rebates charged to the same fund." (Laws 1876, ch. 34, § 91.) In 1895 the legislature amended a section of the statute, which fixed the time of settlement and the method of keeping accounts between the county treasurer and a city of the first class, by adding to the clause requiring the treasurer to pay to the city, at certain dates, all moneys collected for it, these words: "its proportion of penalties and interest." (Laws 1895, ch. 260, § 1.) This was elaborated in 1903 into: "and the city's proportion on

all penalties and interest collected on all taxes and special assessments." (Laws 1903, ch. 122, § 136.) In this form it is a part of the present statute.' (Gen. Stat. 1909, § 1000.) The interpolation in its original form was held to mean that the county treasurer shall pay to cities of the first class all penalties collected for delinquencies in the payment of taxes levied by the city, while in the case of school districts (and presumably in the case of cities of the second and third classes and townships) the penalties were still to be turned into the county fund. (*Sedgwick County v. Wichita,* 62 Kan. 704, 64 Pac. 621.) Upon the strength of that ruling the city of Kansas City demands the penalties accruing from delay in the payment of its taxes. The county treasurer resists the demand upon various grounds.

It is suggested that in the sentence "All penalties shall be credited to the county fund, and all rebates charged to the same fund," the second clause originally meant that rebates should be charged to the same fund that was credited with the penalties; and that when a change was made in the beneficiary of the penalties accruing on city taxes—crediting them to the city instead of to the county—a like change was effected in the fund to which city rebates should be charged. This interpretation might seem to reach a more equitable result, but we are of the opinion that the language quoted was intended to mean that the penalties are to be credited to the county fund and the rebates charged to that fund—the same fund—the county fund. This intention seems too obvious to permit of a different reading.

The defendant maintains that under this construction the statutes violate the provision of the state constitution requiring a tax to be applied only to the object in pursuance of which it was levied (Const. art. 11, § 4), and also violates the first paragraph of the fourteenth amendment to the federal constitution in that it deprives taxpayers of the county who reside outside of the city of property without due process of law, and

Kansas City v. Stewart.

denies to them the equal protection of the law. The question with regard to the state constitution was raised and passed upon in the Sedgwick county case already cited. It was there argued, and the argument was approved in a dissenting opinion, that the penalty was a part of the tax and could be applied to no other purpose than that for which the tax was levied. The court held, however, that while the penalty was to be regarded as a part of the tax for certain purposes, and would ordinarily attach to the original tax and be disposed of in the same way, the legislature may direct a different disposition. The court now adheres to that view, which finds some support in the text and the cases cited in 37 Cyc. 1594, and which is thus elaborated, although with regard to a different constitutional provision, in *New Whatcom v. Roeder,* 22 Wash. 570, 61 Pac. 767:

"It will be observed that the legislature, and not the municipality, fixes the date of the delinquency and the interest charge; in other words, creates the delinquent fund arising from this source. In tax laws penalties proper and interest charges are imposed for mere delinquencies in order to hasten payment. The general law of the state imposes this charge as a penalty for neglect to pay the tax in due season. The fund arising from this source is created by the legislative act of the sovereign state, and it follows that the legislature has a right to dispose of this fund to the same extent as other fines and penalties arising from the violation of other laws of the state." (p. 575.)

The contention is made that to charge the county with the rebates granted with respect to the taxes of cities of the first class is in effect to levy taxes upon one public body for the benefit of another. To this we can not agree. The allowance of a rebate is in substance a reward or inducement for the prompt payment of taxes. We think the legislature may cast this incidental expense upon the county, just as it might

54—90 KAN.

create a county office, the occupant of which should receive a salary for visiting those liable for taxes and endeavoring to hasten their payments. The plan adopted is not different in principle from the requirement that county officers, who are paid wholly from the county treasury, shall collect city, township and school district taxes.

"Counties are purely the creation of state authority. They are political organizations, whose powers and duties are within the control. of the legislature. That body defines the limits of their powers, and prescribes what they must and what they must not do. It may prescribe the amount of taxes which each shall levy, and to what public purpose each shall devote the moneys thus obtained." (*The State, ex rel., v. Comm'rs of Shawnee Co.*, 28 Kan. 431, 434.)

The argument that the federal constitution is violated is founded upon the theory that the statute discriminates between the residents of a city and the residents of the county outside of the city, to the disadvantage of the latter, and that there is no reasonable basis for such a classification in this connection. The statute in effect requires the county to pay all rebates, which, as already said, are rewards for the prompt payment of taxes. The penalties for delay in the payment of taxes levied by a city of the first class go to the city, and its taxpayers alone are thereby benefited. The penalties for delay in the payment of other taxes go to the county, and the taxpayers of the city share the benefit with the taxpayers of the county. This does result in a measure of discrimination between the taxpayers of the city and those of the rest of the county, to the disadvantage of the latter. In *State v. Mayo,* 15 N. Dak. 327, 108 N. W. 36, such a discrimination was held to violate a provision of the state constitution forbidding the granting of any privilege or immunity to one citizen or class of citizens which is not granted on the same terms to all. Incidentally it may be men-

Kansas City v. Stewart.

tioned that that case approves the decision of this court
that the legislature may control the disposition of pen-
alties imposed for delinquency in respect to the pay-
ment of taxes.

We do not think the arrangement in question
amounts to a classification which is so clearly without
any reasonable basis that it must be held to be beyond
the power of the legislature. It may not be easy to say
just why one rule should be applied with respect to
penalties for delay in the payment of taxes levied by a
city of the first class, and another with respect to those
for delay in the payment of the taxes levied by a city
of the second or third class, or by a township or a
school district.

To uphold the law, however, it is not necessary that
the court should be able to find the reason for the dis-
tinction. The statute must stand unless the court can
say it is clear that no sufficient reason can possibly be
found. Many differences exist in the methods of gov-
erning cities of the various classes, for which it would
be difficult to find a specific reason having relation to
the number of inhabitants—the sole basis of their
classification. The discretion of the legislature in the
matter of taxation is especially broad. (4 Encyc. of
U. S. Supr. Ct. Rep. 403.) And its control of munici-
palities of its own creation is subject to few re-
strictions.

"Counties, cities, and towns exist only for the con-
venient administration of the government. Such or-
ganizations are instruments of the State, created to
carry out its will. When they are authorized or di-
rected to levy a tax, or to appropriate its proceeds, the
State through them is doing indirectly what it might
do directly. It is true the burden of the duty may thus
rest upon only a single political division, but the legis-
lature has undoubted power to apportion a public bur-
den among all the taxpayers of the State, or among
those of a particular section." (*Railroad Company v.
County of Otoe*, 83 U. S. 667, 676.)

"Very wide discretion is left with the law-making power in this particular. The Legislature· may change the political subdivisions of the Commonwealth by creating, changing, or abolishing particular cities, towns, or counties. It may· require any of them to bear such share of the public burdens as it deems just and equitable. This right has been exercised in a great variety of ways." (*Attorney General v. Williams,* 174 Mass. 476, 481; approved in *Williams v. Parker,* 188 U. S. 491, 503.)

It is difficult to suggest a reason why a poll tax for road purposes should be exacted from residents of a city if it is of the second class, but not if it is of the first class. Yet this discrimination is upheld even where the court is unable to find that the persons exempted are under any specific compensating burden. (*Shane v. City of Hutchinson,* 88 Kan. 188, 192, 127 Pac. 606.) A basis for favoring the taxpayers of a city of the first class by giving the city the benefit of the penalties accruing to city taxes, while other penalties are retained by the county, may perhaps be found in this consideration: The county clerk and county treasurer receive, for the benefit of the county, fees for taking various steps in connection with the sale of real estate for delinquent taxes—such as for making out notices, and for issuing tax-sale certificates and tax deeds. These become in effect charges against the owners of the property. They are uniform for each tract, irrespective of value. In the larger cities there will naturally be many lots of relatively small value that will become liable for such payments. It is possible that the legislature estimated that the county would from this source derive a larger revenue, in proportion to the value, from property in cities of the first class than from that outside, and decided to give such cities the benefit of the penalties on its taxes as a means of compensating, in a rough way, the resulting inequality.

Various minor questions regarding procedure are raised. It is suggested that mandamus will not lie, be-

Kansas City v. Stewart.

cause even if the plaintiff's theory of the law is correct it had an adequate remedy at law by action on the defendant's official bond. Early decisions of this court support that view. (*Elsbree, Relator, v. Bridgman,* 8 Kan. 458.) But the rule has been changed by statute. (Laws 1901, ch. 284, § 1, Civ. Code, § 715.) The contention is also made that a motion to quash the alternative writ should have been sustained because the amount demanded was disputed, because the defendant was entitled to a jury trial, because an accounting was necessary, and because a judicial question was presented which had not been determined in any action between the parties. In *Board of Education v. Spencer,* 52 Kan. 574, 35 Pac. 221, it was said that mandamus was not an appropriate proceeding in which to determine an amount which depended upon the result of a long and complicated accounting, covering transactions extending over seventeen years. Here, however, the court did not undertake to settle any disputed amount. The purpose of the proceeding was not to ascertain what sum was due on a settlement, but to decide to what funds the rebates and penalties should be charged and credited—to determine the treasurer's duty in that regard. The treasurer was ordered to pay to the city the sums due under the statute as interpreted by the court, including the penalties on city taxes for 1912 and 1913, and a specified amount which by order of the county commissioners had been charged to the city upon a different interpretation. The only substantial controversy between the parties was with regard to the effect of the statute, and this question could be determined as well in mandamus as in any other proceeding. (*Riley v. Garfield Township,* 54 Kan. 463, 38 Pac. 560.) It is contended that an adjudication should not have been had without the board of county commissioners having been made a party. " 'Technically, in mandamus the only necessary parties are the plaintiff, who asserts the right to have an act done, and the defendant, upon

whom the public duty rests to perform it. The practice is common and commendable to bring in other persons who are likely to be injuriously affected by the judgment, in order that they may have an opportunity to be heard in their own behalf, and in a proper case the court will suspend proceedings until this is done. (*Livingston v. McCarthy*, 41 Kan. 20.)' (*The State v. Railway Co.*, 81 Kan. 430, 435.)" (*The State v. Dolley*, 82 Kan. 533, 535, 108 Pac. 846.) Here the county might well have been made a party. No request for such action, however, was made by the county or by the defendant, although the answer to the alternative writ alleged the absence of the county as a reason why a peremptory writ should not issue. In the name of the treasurer a defense upon the merits has been made, in which the interests of the county have been vigorously and ably presented. The omission formally to make the county a party is not regarded as a ground for reversing the judgment.

The judgment is affirmed.

BENSON, J. (dissenting) : To require the taxpayers of the county outside of the city to make good to the city the rebates allowed to its taxpayers while allowing the city all penalties thereon is so manifestly unjust as to challenge a careful examination of the statutes invoked as authority, and if necessary a reëxamination of the decision of this court cited to uphold the contention of the city. That a penalty is a part of the tax appears to the writer to be entirely clear. It was so held in the early cases cited in the dissent of Justice JOHNSTON in *Sedgwick County v. Wichita*, 62 Kan. 704, 64 Pac. 621. By our statutes rebates are taken from and penalties added, depending upon the time of payment. Thus the tax is diminished or augmented, as the case may be, but the amounts subtracted or added are still parts of the tax. Here is an illustration. An assessment of $1000 is charged upon property in a city of the

first class. By payment before December 20, $975 discharges the obligation. If not paid at the prescribed date, $25 is added and the obligation becomes $1025. If the city suffered the reduction in the one case and gained the addition in the other, the loss would be compensated by the gain, but this writ being allowed, the loss will be made up by the county at large, while the city alone enjoys the gain. Thus property outside of the city contributes for street and other improvements made by special assessments, and a part of the taxes assessed and collected for the outside municipalities upon property therein is directed from the purposes for which they were levied and applied to the payment of expenses of the city, in violation of section 4 of article 11 of the constitution.

To my mind the dissent in the Wichita case is based upon reasons that have not been successfully assailed, and the decision in that case ought to be reconsidered, especially in view of the increasing injustice resulting from the act of 1903, extending the operation of the act of 1895 to special assessments.

In the opinion of the majority it is well said that it may not be easy to say why the distinction referred to should be made with respect to penalties upon taxes levied by cities of the first class and upon those levied by other municipalities. It appears to the writer of this dissent to be not only difficult but impossible to find a reason founded upon a just classification, or upon any classification that is not arbitrary or fictitious. (*Rambo v. Larrabee,* 67 Kan. 634, 73 Pac. 905.) I dissent for the reasons already stated.

Mr. Chief Justice JOHNSTON joins in this dissent.