## SALT LAKE CITY v. WILSON.

No. 2675.   Decided April 2, 1915 (148 Pac. 1104).

1. TAXATION—POLL TAX—VALIDITY OF STATUTE—UNIFORMITY—LIM-
   ITATION. Const. art. 1. section 24, providing that all laws of a
   general nature shall have uniform operation, and article 13,
   section 3, providing that taxation shall be uniform and regu-
   lated by general law, do not apply to road poll taxes; and hence
   Laws 1909, chapter 118, section 6, which provides for an annual
   road poll tax of two dollars, to be collected and expended in
   cities under such regulations as may be prescribed by ordinance,
   is not violative thereof, though the privilege given by former
   legislation of performing labor in lieu of paying the tax is
   eliminated.   (Page 64.)

2. HIGHWAYS—POLL TAX—POWER TO IMPOSE. The imposition of
   a road poll tax, being in the nature of a police regulation, is
   within the police powers of the state, but the state is limited
   within reasonable bounds in the application and enforcement
   of this power.   (Page 67.)

3. CONSTITUTIONAL LAW—HIGHWAYS—POLL TAX—VALIDITY OF STAT-
   UTE—EQUAL RIGHTS AND PRIVILEGES. LAWS 1909, c. 118, sec.
   6, prescribing an annual road poll tax of two dollars, is not
   violative of Const. art. 4, sec. 1, providing that both male and
   female citizens shall enjoy equally all civil, political and relig-
   ious rights and privileges, though the poll tax is imposed only
   on men.   (Page 68.)

4. STATUTES—SUBJECT-MATTER—ROAD POLL TAX—VALIDITY OF STAT-
   UTE. Laws 1909, c. 118, defining the powers of the county com-
   missioners as to roads, providing for the appointment of a coun-
   ty road commissioner and prescribing his duties, providing an
   annual road poll tax and specifying who shall be liable therefor,
   and the manner of collecting and expending same within and
   outside of cities and towns, and repealing and incorporating
   Comp. Laws 1907, tit. 30, c. 2 (sections 1134-1138), and also title
   64 (sections 1743-1751), is not violative of Const. art. 6, section
   23, providing that no bill shall contain more than one subject,
   no new legislation or material change in the existing road law
   being attempted, and the matters contained in title 30, c. 2, and
   in title 64, not being so foreign to each other as to prevent them
   from being incorporated in one act, though the former relates
   to commissioners and supervisors of highways, and the latter

relates to road poll taxes, and it being immaterial that the sub-
ject of cities and towns was treated in title 13 (sections 169-
313x2).[1]  (Page 70.)

5.  STATUTES — SUBJECT-MATTER — AMENDATORY STATUTE.    Under
Const. art. 6, section 23, providing that no bill shall contain
more than one subject, anything may be incorporated in an
amendment to a statute which would have been germane, or
would have directly related to the subject-matter of the original
statute, or which could properly have been included therein.
(Page 70.)

6.  STATUTES—SUBJECT-MATTER—CONSTRUCTION OF CONSTITUTIONAL
PROVISION.  While Const. art. 6, section 23, provides that a bill
shall not contain more than one subject, is mandatory, and
should be so applied as to effectuate its purpose in preventing
the combination of incongruous subjects, neither of which could
be passed when standing alone, it should be liberally construed
in favor of upholding the law, and with a consideration of the
fact that it was aimed at new legislation rather than at consoli-
dations and codifications.[2]  (Page 72.)

7.  CONSTITUTIONAL LAW—PROVINCE OF COURTS—INJUSTICE OF STAT-
UTE.  That a statute presribing a road poll tax may be unjust
does not authorize the courts to declare it invalid.  (Page 73.)

Appeal from District Court, Third District; Hon. *F. C.
Loofbourow*, Judge.

Action by Salt Lake City, a municipal corporation, against
M. E. Wilson.

Judgment for defendant.  Plaintiff appeals.

Reversed and Remanded, with directions.

*H. J. Dininny*, City Atty., *Aaron Myers* and *W. H. Fol-
land*, Asst. City Attys., for appellant.

*M. E. Wilson for* respondent.

---

[1] *Edler* v. *Edwards*, 34 Utah, 13, 95 Pac. 367; *Marioneaux* v. *Cutler*,
32 Utah, 486, 91 Pac. 355.

[2] *Edler* v. *Edwards*, 34 Utah, 13, 95 Pac. 367.

FRICK, J.

Salt Lake City, hereafter called appellant, commenced this action in the City Court of Salt Lake City against the defendant to recover a road poll tax amounting to two dollars. The The action was based upon a city ordinance, which was approved June 15, 1909. The ordinance in question was adopted pursuant to Chapter 118, Laws Utah 1909, which was approved March 23, 1909, and went into effect May 12th of that year. The ordinance is fully set forth in the complaint, together with the notice that was served on the defendant by the "street supervisor" of Salt Lake City. The defendant demurred to the complaint upon the ground "that it did not state facts sufficient to constitute a cause of action." He assailed both the ordinance and said Chapter 118 as being unconstitutional and therefore void. Defendant supplemented his general demurrer by specifically enumerating the grounds which he contended vitiated Chapter 118 and the ordinance aforesaid. The City Court duly certified the action to the District Court of Salt Lake County where, after a hearing upon the demurrer, it was sustained. The appellant elected to stand upon its complaint, whereupon the District Court entered judgment dismissing the action, and hence this appeal.

In view that the title of the act in question is also assailed upon the ground of duplicity, we quote it in full:

"An act defining powers of county commissioners as to roads; appointing county road commissioner, defining his duties, providing an annual road poll tax; specifying who shall be liable and manner of collecting and expending the same, repealing Chapter 2, Title 30, and also Title 64, complied Laws of Utah, 1907."

Section 1 of the act is divided into six separate divisions. In the first the county commissioners of the several counties of this state are required to appoint biennially a county road commissioner, to fix his compensation and to remove him for cause. In the divisions following are defined the powers and duties of the county commissioners respecting the platting, abolishing, maintaining, and improving the public roads of the several counties. Section 2 provides that a record be kept

by the county clerks of all orders and proceedings of the county commissioners respecting the public roads. Sections 3 and 4 define the powers and duties of the county road commissioner, among which are that he serve notice on persons who, under the law, are ''liable to the payment of road poll tax'' and to collect said ''road poll tax.'' Section 5 provides that the county commissioners may require special reports from the county road commissioners at any time. Section 6, which is the section that is more particularly assailed by the defendant, so far as material here, reads as follows:

''Two dollars lawful money is an annual road poll tax upon every man over twenty-one and under fifty years of age, not physically incapacitated to work and not exempted by law. Within incorporated cities or towns, said road poll tax may be collected and expended under such regulations as may be by the city ordinance prescribed in road improvements.''

Section 7 provides for the collection of the road poll tax in the county at large by the county road commissioner. Section 8 prescribes a penalty for failure to pay the road poll tax. Section 9 requires the county road commissioner to prepare a list of the names and addresses of all persons subject to pay the road poll tax outside of cities and towns. Sections 10 and 11 provide who shall be exempt and how the fact of exemption shall be ascertained and certified. The exemptions are such as are usual in such laws, namely, volunteer firemen and officers, musicians and members of the National Guard, etc.

The constitutionality of the act is assailed on the following grounds: (1) That it offends against Article 1, Section 24, of our Constitution, which reads as follows: ''All laws of a general nature shall have uniform operation.'' (2) That it also violates Article 4, Section 1 of that instrument, which provides:

''The rights of citizens of the State of Utah to vote and hold office shall not be denied or abridged on account of sex. Both male and female citizens of this state shall enjoy equally all civil, political and religious rights and privileges.''

(3) That it is contrary to Article 13, Section 3, which in substance, provides that the Legislature shall provide for a uniform and equal rate of assessment and taxation, and shall,

by general law, provide such regulations as shall secure a just valuation for taxation of all property, "so that every person and corporation shall pay a tax in proportion to the value of his, her or its property." (4) That it is violative of Article 6, Section 23, which reads as follows:

"Except general appropriation bills, and bills for the codification and general revision of laws, no bill shall be passed containing more than one subject, which shall be clearly expressed in its title."

There are other constitutional provisions referred to in connection with the foregoing, but they have no special application here.

In order to obtain a more comprehensive view of the legal questions involved we shall give a brief history of the so-called road poll tax law as the same has been in force in the Territory and State of Utah for many years. Chapter 118, as it now stands, is composed of Chapter 2, Title 30, and of Title 64 of the Laws of Utah 1907. Chapter 2, Title 30, comprised Sections 1134 to 1138, inclusive, of said Compiled Laws, and Title 64 was composed of Sections 1744 to 1751, inclusive, of said compilation. Sections 1134 to 1138 are likewise found in the Revised Statutes of Utah of 1898, by the same numbers, and Sections 1744 to 1751 are also contained in that revision, under the same numbers, and are there designated as Title 53. Much that is contained in all of Sections 1134 to 1138 and Sections 1744 to 1751 is also found in Comp. Laws Utah 1888, Sections 2065 to 2092, inclusive. Section 2077 of that compilation is, in its terms, quite similar to Section 6 of Chapter 118, which is the section in question here. Indeed, the language referring to cities and towns is practically the same as in Section 6. It is as follows:

"Within incorporated towns or cities said poll tax may be collected under such regulations as may be by the ordinance provided and be used by said towns or cities for improving" the streets.

Sections similar to 1744-1751 are found in Comp. Laws Utah 1876, p. 165. It is there made to appear that the first poll tax law in force in the Territory of Utah was approved on the 16th day of January, 1862, and by referring to the

several compilations and revisions of the laws of the Territory and State of Utah it will be found that practically the same · law respecting the payment of a road poll tax that is now in force has been in force for more than 50 years, the only difference being that those who were subject to the tax could perform two days' labor or, under the laws of 1876, pay $1.50 in cash, while under the laws of 1888 they were required to perform two days' labor or pay three dollars in cash.  Such continued to be the law until Chapter 118 was passed, when the amount was reduced to two dollars payable in money. There is, therefore, nothing that is really new in Chapter 118.  The chapter, in effect, is merely a consolidation of Sections 1134-1138, which composed Chapter 2 of Title 30 and Sections 1744-1751 which composed Title 64 of the Comp. Laws 1907, with such changes, modifications and additions as the development of the public roads and changes in the government thereof and the laws generally would naturally bring about.  That part which relates to the road poll tax is, however, practically the same, except that the amount is reduced from three dollars to two dollars and the duty of performing labor is eliminated.  It is the latter change or feature, however, of Chapter 118 that the defendant seems to think changes the nature or character of the road poll tax from a police regulation to a tax proper.  That such is his contention is made apparent by reference to page 6 of his brief, where he says:

"At the outset it should be remembered that we are not dealing with a statute relative to a highway assessment payable in labor, but we are dealing with a statute requiring the payment of money only, a state capitation or poll tax."

It is as manifest from the law itself as it could well be made that the present road poll tax is precisely what it always has been in this state, namely, an imposition in the nature of a police regulation, not a tax in the sense that taxes are spoken of in our Constitution and statutes when the subject of general taxation is under consideration.  The only case that we have been able to find (*Hassett* v. *Walls*, 9 Nev. 387) which supports defendant's theory that the road poll tax is

a tax as that term is generally applied makes no distinction whatever between a so-called poll tax that may be discharged by performing labor and one that is payable in money. Nor is such a distinction made in the numerous cases in which it is held that road or highway poll taxes do not come within the general purview of the constitutional and statutory provisions relating to general taxation. In the case of *East Portland* v. *County of Multnomah*, 6 Or. 62, a highway poll tax was required to be paid in cash under a statute similar to Section 6 of Chapter 118. The statute in that case was assailed on the same grounds that Section 6 is assailed, but the Supreme Court of Oregon held that such a road poll tax did not come within the constitutional provisions relating to general taxation. That case was approved and followed by the same court in *Multnomah County* v. *Sliker*, 10 Or. 65. The Supreme Court of Kansas in *Re Dassler*, 35 Kan. 684, 12 Pac. 134, in discussing the nature or character of such a poll tax, says:

"The power to impose labor for the repair of public highways and streets has been exercised from time immemorial, and comes within the police regulation of the state or city. A commutation of such labor in money in lieu of work, while in the nature of a tax, is not in common speech or in customary revenue legislation, understood as embraced in the term tax. The power to impose this labor is exercised for public purposes, and the general good and convenience of the community. (Citing cases.) There are certain services which may be commanded of every citizen by his government, and obedience enforced thereto; among these services are labor on the streets or highways, and training in the militia."

It accordingly is held by practically all authorities that such a road poll tax does not come within the uniformity clause of the Constitution relating to general taxation, and that it is not a property tax nor a poll or capitation tax as that term is generally understood and applied by the courts. Upon this question see *Tekoa* v. *Reilly*, 47 Wash. 202, 91 Pac. 769, 13 L. R. A. (N. S.) 901, and note; *Shane* v. *City of Hutchinson*, 88 Kan. 188, 127 Pac. 606; *City of Faribault* v. *Misener*, 20 Minn. 396 (Gil. 347); *Sawyer* v. *City of Alton*, 4 Ill. (3 Scam.) 127; *Pleasant* v. *Kost*, 29 Ill. 490; *Fox* v. *Rockford*, 38 Ill. 451; *Macomb* v. *Twaddle* (Bradwell), 4 Ill.

App. 254; *Short* v. *State*, 80 Md. 392, 31 Atl. 322, 29 L. R. A. 404; *Thurston County* v. *Tenino Stone Quarries*, 44 Wash. 351, 87 Pac. 634, 9 L. R. A. (N. S.) 306, 12 Ann. Cas. 314; *State* v. *City of Topeka*, 36 Kan. 76, 12 Pac. 310, 59 Am. Rep. 529; *The Town of Tipton* v. *Norman*, 72 Mo. 381; *State* v. *Rayburn*, 2 Okl. Cr. 413, 101 Pac. 1029, 22 L. R. A. (N. S.) 1067, Ann. Cas. 1912A, 733; *Galloway* v. *Tavares*, 37 Fla. 58, 19 South. 170; Elliott on Roads and Streets (3d Ed.), Sections 479-480; Cooley on Taxation (3d Ed.) 16. In the foregoing cases the contentions of the defendant are fully discussed and in all of them it is held that the uniformity clause of the Constitution and the provisions relating to general taxation have no application to a road poll tax. In *Tekoa* v. *Reilly, supra,* the Supreme Court of Washington overruled the case of *State* v. *Ide*, 35 Wash. 576, 77 Pac. 961, 67 L. R. A. 280, 102 Am. St. Rep. 914, 1 Ann. Cas. 634, where a different conclusion had been reached. In *Thurston County* v. *Tenino Stone Quarries, supra,* the question of exempting women is fully and learnedly discussed. In many of the cases cited above, the question of exemption is discussed and decided contrary to defendant's contentions.

Defendant's contention that if the state can require the payment of two dollars it may compel the payment of any number of dollars is also fully considered by the Supreme Court of Kansas in *Re Dassler, supra.* It is there stated that it is not necessary to determine that question until the state attempts to impose unreasonable burdens in  **2** that respect. As we have seen, the imposition of a road poll tax is in the nature of a police regulation and thus within the police powers of the state. While the limitations of such a power are not always easily stated or defined, yet it is quite as clear that the state is limited in the application and enforcement of the power within reasonable bounds as it is certain that the power exists. If the state, therefore, imposes an unreasonable burden in the form of a labor or cash poll tax, the courts, we think, would have no difficulty in keeping such a law within reasonable bounds the same as any other police regulation must be kept. The amount of the imposition by our laws as well as by those imposed by other

states, clearly shows that there is not the slightest danger nor inclination on the part of the several states that they will impose an unusual burden upon the citizen.

.The defendant, however, further contends that our Constitution is broader with respect to the rights and privileges that are enjoyed by the sexes than are the provisions of the Constitutions of the several states whose decisions we have referred to, and hence it is contended those cases are not controlling here. As we have seen, our Constitution provides:

"The rights of citizens of the State of Utah to vote and to hold office shall not be denied or abridged on account of sex. Both male and female citizens of this state shall enjoy equally all civil, political and religious rights and privileges."

We confess our inability to see anything in the foregoing quotation which prevents a reasonable classification of the citizens of the state with regard to the performance of certain duties which may be required by the state under its police power. Why should not women be exempt from the performance of some duties which are imposed on men? Surely one need not at this day and age point out the physical differences that exist between the sexes, nor dwell upon the reasons why females, in the nature of things, cannot respond to all the demands of the state. To perform labor on the public roads or streets, or to pay the sum of two dollars for the purpose of improving them, is neither a political, religious, or other civil right or privilege. Nor does it fall within the right or privilege of exercising the franchise or of holding an office. It is not likely that females will ever compete with the males for the office of county road commissioner or for any office relating to the public roads. But in practice the imposition and payment of a road poll tax by women would, in the long run, and in a large measure at least, merely add an additional burden on a large number of men, and thus, instead of bringing about uniformity of burdens, would tend to the opposite result. It is a matter of general knowledge that man, during his active career, is the breadwinner for the family, and that upon him must fall the direct burden of discharging the public duties, and especially so when physical exertion and

strength are required. Now, to the ordinary married man, it would be utterly immaterial whether two days' labor or two dollars in money were required by the state, since he would have to perform the one or pay the other. He not only would have to pay the money, but he would have to earn it.

Entirely apart from the legal phase of the question, however, how does it benefit the married man to require his wife or his daughters to pay a road poll tax? It would only tend to place an additional burden on him without benefiting any one. Even if counsel's contentions were conceded therefore, he would not gain anything in a practical sense. Of course, such consequences would not control the principle he contends for if it were true that under the constitutional provision which he invokes women may not be put in a class by themselves. Such a classification has, however, always been made and enforced from time immemorial, and unless prohibited in express terms in the Constitution, it is a natural and proper one to make. We can discover nothing in the constitutional provision now under consideration which prohibits such a classification, and hence the contention cannot prevail. In passing this phase of the case we desire to state that after an extended search we have been able to find but one case wherein it is squarely held that a road poll tax like the one in question here is unconstitutional. There may be and perhaps are others. The case is the one before referred to, namely, *Hassett* v. *Walls*. No authority is cited in that case, nor is there any satisfactory reason given in support of the conclusion. All that can be said is that the Nevada Supreme Court, as then constituted, refused to be bound by the decisions of other courts upon the subject. It is but fair to state that another case is sometimes referred to as sustaining the Nevada decision, namely, *Proffit* v. *Anderson* (Va.), 20 S. E. 887. A mere cursory examination of that case, however, will disclose that the decision is based upon an entirely different ground. The Constitution of Virginia contained a provision that "counties and corporations shall have the power to impose a capitation tax not exceeding fifty cents per annum for all purposes." Louisa County, in that state, sought to impose an additional road poll tax, and the

court held that the fifty cents provided for in the Constitution covered every imposition that could be made except a tax on property by valuation. The decision, therefore, can have no influence upon a question like the one before us.

The defendant, however, also contends that Chapter 118 is void because the act contains more than one subject. A careful examination of Chapter 118 will disclose that no new legislation was attempted. The principal **4, 5** change that was made in the first five sections of the old law, namely, Sections 1134 to 1138, was to provide for the appointment of one road commissioner instead of appointing several so-called road supervisors in each county biennially. The powers and duties which theretofore were vested in and imposed on the several road supervisors were, by the act, conferred and imposed on the road commissioner. All other changes in those sections merely made the act conform to the principal change we have just pointed out. The changes in the other sections, namely, Sections 1743 to 1751, are, if anything, even less radical. The principal change is contained in Section 1743, which is Section 6 of Chapter 118, and which is the section that is specially assailed. The change consists in this: Instead of requiring "two days' work of eight hours each, or, in lieu thereof, three dollars in lawful money," as the old section provided, the new one reads, "two dollars lawful money is an annual road poll tax." The other changes are again such as will make the act conform to one road commissioner instead of several road supervisors. The Legislature no doubt could have adopted a different method in making the foregoing changes had it been so advised. It could have passed an act wherein it named all of the foregoing sections and changed or amended them just as was done in the new act. The title to such an act would have been sufficient under our Constitution if it had merely mentioned the different sections which were to be amended thus: "An act to amend Sections 1134, 1135, etc., Comp. Laws Utah 1907." *Edler* v. *Edwards*, 34 Utah 13, 95 Pac. 367. Defendant, however, contends that the Legislature offended against the constitutional provision now under consideration in con-

solidating Chapter 2 of Title 30 and Title 64. Upon this point, at page 14 of his brief, he says:

"Title 64 of the Laws of 1907 was one subject, namely, poll tax. The powers and duties of county commissioners was Chapter 2 of Title 30 of the Laws of 1907, relating to highways. The subject of cities and powers of city councils was another title, to wit, Title 13 of the Laws of 1907."

It is contended, therefore, that there are three distinct subjects contained in Chapter 118. Let us pause for a moment and examine this contention. It is now settled doctrine that anything could have been incorporated into the sections as amended which would have been germane or directly related to the subject-matter of the original sections, or which could properly have been included therein originally. Upon that point we desire to call special attention to what was said in *Marioneaux* v. *Cutler*, 32 Utah, 486, 91 Pac. 355. Reference to that case will show, we think, that the matters contained in Chapter 2 of Title 30 and Title 64, *supra,* were not so incongruous or foreign to each other as not to permit them to be incorporated into one act. What is there in the first five sections of Chapter 118 that could not have been properly included within any amendment of Sections 1134 to 1138? The powers of the county commissioners referred to in the first five sections of Chapter 118 are not as sweeping as defendant's statements would imply. They are strictly limited to matters relating to public roads and a road poll tax and the manner of its collection and disbursement. These matters are all connected with or related to each other. Are not the maintenance or improvement of public roads and the collection and disbursement of a road poll tax sufficiently related to each other to be properly included in one act? We certainly have found nothing in the decisions, or laws indicating that such may not be done. After carefully considering and reflecting on the rules laid down by us in *Edler* v. *Edwards* and *Marioneaux* v. *Cutler, supra,* we cannot see how anything that is said in the first five sections of Chapter 118 conflicts with the rules there laid down.

It is, however, further contended that Title 64, comprising

Sections 6 to 11 of Chapter 118, covers at least two sub-
jects: (1) The road poll tax; and (2) the conferring of          6
powers upon cities and towns respecting its collection.
If we are correct in holding that the provision respecting the
imposition and collection of a road poll tax is not foreign to
legislation concerning public roads and highways, then again
there is nothing in the last six sections of the act which offends
against the constitutional provision in question   The objec-
tion is therefore limited to the fact that the Legislature con-
solidated Chapter 2 of Title 30 and Title 64 as aforesaid. We
have already attempted to show that there is nothing con-
tained in the first five sections of Chapter 118 which could
not properly have been included in one amendatory act.
Now, what is there in the last six sections of that chapter
that could not have been properly included in the same
amendatory act? Surely there is nothing, except it be the
provision that permits cities and towns to collect and expend
the poll tax on ''road improvements.'' If in amending or
in consolidating acts of the Legislature a rule as strict as the
defendant contends for shall be enforced, then the subjects
of legislation will be indefinitely increased. If the matter
objected to had not before been treated in different chapters
of the Compiled Laws, we do not think that any one would
seriously contend that Chapter 118 contained more than one
subject under the liberal rule of construction applied by the
courts. The mere fact, therefore, that the subject-matter of
Chapter 118 was treated in different chapters or different
titles is, under the circumstances, not even persuasive that
there is more than one legislative subject contained in the act.
It often happens that two, and even more, independent acts
are passed the whole subject-matter of which could properly
have been embraced within one act. Consolidation of acts,
therefore, standing alone, is of little, if any, importance upon
the question of plurality of subjects. As we pointed out in
*Edler* v. *Edwards, supra,* that while the constitutional pro-
vision now under consideration is mandatory and binding
alike upon the courts and the Legislature, yet it should be
liberally construed in favor of upholding a law, and should be
so applied as to effectuate its purpose in preventing the combi-

nation of incongruous subjects neither of which could be passed when standing alone. A too strict application of the provision might, however, result in hampering wholesome legislation upon any comprehensive subject rather than in preventing evils. Moreover, a mere reading of our constitutional provision shows that it was aimed at new legislation rather than at consolidations and codifications. By this we do not mean that the Legislature may consolidate any existing acts regardless of whether the matters therein contained are related or germane or not; but what we mean is that the object and purpose of the provision was aimed at new legislation rather than to prevent mere trifling changes and amendments of existing laws. In view of this, and in view of the consequences that may, and usually do, follow from declaring laws void that have been enforced for à generation or more, courts cannot exercise too much care and prudence in passing upon such questions. The cases upon this subject are collated and cited in appellant's brief, and we shall do no more than to refer thereto.

Much is said in defendant's brief concerning the injustice of a road poll tax. If we were in entire accord with counsel's contentions in that regard, it still would be of no consequence here. To cure defects in or to repeal bad laws is a legislative, not a judicial, function. A legislative repeal of a law merely arrests its further effect, while to judicially declare it void may be fraught with consequences that no one can foresee. Moreover, to declare laws invalid upon the ground of plurality of subjects may establish a precedent which might effect or at least create doubt respecting the validity of other laws, and that is another reason why courts are slow to strike down a legislative act. In our judgment the plurality of the act in question is not so clearly established as to authorize us to declare it void. Nor do we, for the reasons herein stated, consider the act vulnerable to the other objections.

The judgment is therefore reversed and the cause is remanded to the District Court of Salt Lake County, with directions to overrule the demurrer and to proceed with the case in the usual course.

STRAUP, C. J., and McCARTY, J., concur.