No. 21,604.

The City of Topeka, George P. Hayden, as City Attorney, and The State of Kansas, ex rel. Robert D. Garver, as County Attorney, *Plaintiffs,* v. W. H. Wasson, as Commissioner of Finance of the City of Topeka et al., *Defendants.*

### SYLLABUS BY THE COURT.

1. Cities—*Classification by Population—Poll Tax.* Although it has been determined that the legislature may exempt residents of cities of the first class from a poll tax for road purposes to which other citizens of the state are subject, it does not follow that a similar distinction may be made between cities having more than 80,000 inhabitants, and other cities governed by the same laws and differing from them only in having less than that population.

2. Poll Tax—*Construction of Statute of 1917—Residents of Cities of First Class—Not Liable to Poll Tax.* Where a section of the statute is reënacted as an incident to its amendment in certain particulars the portions thereof which remain unchanged are to be given the same interpretation they had previously received, excepting as a different meaning is indicated by the changes made.

3. Same. Although the decision of this court that the poll-tax law of 1911 did not apply to cities of the first class was to some extent influenced by language used in another statute enacted at the same session, the repeal of such other statute did not change the interpretation of the poll-tax law in that regard.

4. Same. The amendments made in 1917 to the section imposing a poll tax for road purposes do not show a purpose to make any change in the classes of persons who are liable to such tax, and therefore the amended section is to be regarded as having no application to residents of cities of the first class, that construction having already been placed upon the section as it existed prior to that time.

5. Same. In that situation the addition of a proviso declaring that the act shall not apply to cities having a population of over 80,000, being essentially negative in its character, can not be regarded as having the affirmative effect of making a change in the class of persons liable for the tax.

City of Topeka v. Wasson.

Original proceeding in mandamus.   Opinion filed November 20, 1917.   Motion to quash sustained.

*George P. Hayden,* city attorney, and *Robert D. Garver,* county attorney, for the plaintiffs.

*W. F. Schoch,* and *Fred S. Jackson,* both of Topeka, for the defendants.

The opinion of the court was delivered by

MASON, J.:  This original proceeding in mandamus was brought to determine whether the present statute relating to the collection of a poll tax for road purposes is intended to apply to residents of cities of the first class, and if so whether the act is valid.   An alternative writ has been issued, directing the enforcement of the law as so interpreted, and by a motion to quash the writ the interpretation and validity of the law are challenged.

1.  The principal constitutional question argued grows out of the fact that the section under consideration closes with the words:  "provided, however, that this act shall not apply to cities having a population of over 80,000."   The contention is made that there is no reasonable ground for relieving cities of that size from the tax, while imposing it upon all others.   It has been held that the legislature has the power to exempt residents of cities of the first class from a poll tax for road purposes which is otherwise statewide.   (*Shane v. City of Hutchinson,* 88 Kan. 188, 127 Pac. 606.)   The reasoning on which that decision was rested is indicated by these sentences in the opinion:

"The system of caring for the streets of a city of the first class differs from that by which highways are kept in repair in other cities and in townships.   There is a reasonable basis for a classification, giving the poll tax a place in one system and not in the other."   (p. 192.)

The power of the legislature to exempt cities of the first class from the poll tax was justified by the consideration that such cities were governed by a system of laws differing from that of other cities.   All cities of the first class, however, are subject to the same general governmental system, and to the same laws, save that an occasional exception has been made in some particular matter, applicable to cities having a certain

population.   Because the legislature may exempt all cities of
the first class from a poll tax to which other cities are subject,
it does not follow that it may make a similar distinction be-
tween cities having more than 80,000 inhabitants, and other
cities governed by the same laws and differing from them
only in having less than that population.   While for many
governmental purposes the classification of cities according to
population is natural and proper (*Parker-Washington Co. v.
Kansas City,* 73 Kan. 722, 85 Pac. .781), the relation between
the mere number of inhabitants (other conditions, including
the laws in force relating to streets and taxation, being the
same) and the liability to exemption from a road tax for high-
way purposes is so obscure as to cast grave doubt upon the
propriety· of such a distinction, and to make it desirable to
reach a decision of the matter in hand without going into that
question, if such a course is reasonably open.

2.   This consideration requires that we first make a careful
inquiry to determine whether such a discrimination was in-
tended, and this involves the question whether the legislature
of 1917 meant to extend the enforcement of the poll tax to any
cities of the first class.   That conclusion would be inescapable
if the present section of the law relating to the matter were an
entirely new piece of legislation.   The section in controversy,
however, was enacted as an amendment to one already in ex-
istence, and must be construed in the light of the rule that "the
provisions of any statute, so far as they are the same as those
of any prior statute, shall be construed as a continuation of
such provisions, and not as a new enactment."   (Gen. Stat.
1915, § 10973, subdiv. 1; 1 Lewis' Sutherland, Statutory Con-
struction, 2d ed., § 273.)

The entire section as amended reads as follows; in the orig-
inal it comprises a single paragraph, but for convenience of
reference it is here subdivided into several sections, each desig-
nated by a numeral:

"[1.] That section 8790 of the General Statutes of 1915 be amended to
read as follows: Section 8790. That all male persons between twenty-one
and fifty years of age who have resided thirty days in this state and who
are not a public charge shall be liable each year to pay the sum of three
dollars to the township trustee or to the proper officer of the city in which
such person lives, who shall receipt for the same and account therefor
to the treasurer of the township or city and the same shall be expended

City of Topeka v. Wasson.

on the public roads within the township or city in which such persons live.

"[2.] And all moneys so received by such treasurer shall be turned into the road fund for such township or city to be expended as above provided.

"[3.] Any city having a volunteer fire department may have the privilege of exempting the members of such department from paying the tax imposed by this section; provided, that if any such person shall fail to pay such tax within thirty days after the receipt of a notice from the township trustee, or the proper officer of the city, that said tax is due, the person so failing shall upon conviction thereof be adjudged guilty of a misdemeanor and fined in the sum of five dollars.

"[4.] And it is hereby made the duty of the township trustee or proper officer of the city to give such notice to every such person on or before the first day of August of each year, and every such officer who shall fail or refuse to give such notice shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine not exceeding $100 and may be removed from office in the manner provided by law;

"[5.] provided, that nothing herein contained shall be construed to prevent the township trustee of any township from giving the person notified to pay such tax the privilege of paying the same in labor upon the highway at a time and place to be designated by said township trustee, provided such person is willing to so labor at a daily wage for himself of one dollar and a half, or for himself and team of three·dollars;

"[6.] and provided further, that all persons subject to the tax shall pay the same in money or discharge the same by labor as herein provided, whenever required so to do by the said township trustee, but in no event shall any such payment, either in money or labor, be deferred beyond the last Monday in September, on which date, every township trustee and proper officer in every city shall file with the county clerk of his county a report stating in detail the names of the persons notified under the provisions of this section and the method of payment required of each and the fact of payment, whether in money or labor, and such report shall also show the names of all persons notified of the demand made upon them under the provisions of this section who have failed to respond; and upon receipt of these reports the county clerk shall certify to the county treasurer the names of all persons who have defaulted in payment of the sum of three dollars as provided herein and the treasurer shall proceed to collect the same in the same manner as personal property taxes are collected upon default, after first having given the delinquent ten days' notice that unless payment is made a tax warrant will issue for the collection of the tax. The list of delinquents certified to the county treasurer shall be by townships and cities, and shall give the post-office address of each person in default, and shall be a list distinct and separate from the regular tax rolls. After taxes become delinquent herein the person from whom due shall no longer have the privilege of paying the same in labor, but must pay the same to the county treasurer in money. The county treasurer shall pay over to the township or city treasurer entitled thereto all

moneys collected in the jurisdiction of any treasurer when demanded by such treasurer;

"[7.] provided, however, that this act shall not apply to cities having a population of over 80,000." (Laws 1917, ch. 267.)

As already suggested, if this section were an original enactment, the broad language of the first sentence (the only portion having any apparent bearing on the matter) would seem to show clearly that residents of cities of the first class were included within its scope. But that was true also of the section in its earlier form, prior to the amendment of 1917. (Gen. Stat. 1915, § 8790, being Laws 1911, ch. 248, § 36.) The old law contained the exact language designated above as paragraph 1. In the case already cited this court held, for reasons that need not be restated at length, that notwithstanding this language, the history of the legislation, and its relation to other parts of the law, showed plainly that its framers had no intention of extending to cities of the first class a poll tax which had previously not applied to them. (*Shane v. City of Hutchinson,* 88 Kan. 188, 127 Pac. 606.) The language referred to—that of paragraph 1—was there interpreted as having no application to cities of the first class. Having been merely reënacted in 1917 as an incident to the amendment of the section in other respects, it should receive the same interpretation now, unless something in the new act, or in other legislation of the same session, indicates a different purpose.

3. The decision in the Hutchinson case was influenced to some extent by the fact that in another part of the statute a provision that "each incorporated city of the third class shall constitute a separate road district," had just been changed so as to read "each incorporated city of the *second and* third class shall constitute a separate road district," the purpose being to extend the law, which had previously applied only to townships and cities of the third class, to cities of the second class. The argument was that the specific question as to what cities should be brought within the operation of the poll-tax law had engaged the attention of the legislature while it was considering this amendment, and if an intention to extend the tax to cities of the first class had existed, expression would have been given to it by including such cities in the clause quoted. It is true that at the time of the adoption of the law now under consideration, the provision making cities of the second and

City of Topeka v. Wasson.

third class road districts had been eliminated from the statute. But this had been accomplished, not by striking out this particular clause, but by the repeal of almost the entire act of which it was a part, and the substitution of a new system, a principal purpose of which was to enable advantage to be taken of the act of congress providing federal aid to the states in the construction of rural post roads. (Laws 1917, ch. 264, effective March 7, 1917.) Neither the repeal of itself, nor anything contained in the repealing act, suggests an intention to make any change in the law with respect to the classes of persons liable to the poll tax. Therefore, up to the time the law now under consideration was enacted—March 10, 1917— no such change had been made, and the question to be determined is whether anything in the section quoted shows a purpose to make it.

4. As already stated, paragraph 1 was a mere reënactment of the earlier provision. Paragraph 2 replaced a sentence reading; "And all moneys so received by such treasurer shall be paid to the township trustee or proper officer of the city in which the person lives, to be expended as above provided." Paragraph 3 shows no change whatever. In paragraph 4 "August" is substituted for "September," and the provision imposing a penalty for failure to give the notice is new. Paragraph 5 shows no substantial change. Paragraph 6 is new, but relates only to the means for the enforcement of the tax. It is manifest that the alterations in the statute so far referred to had no relation to the extension of the poll tax to cities of the first class.

5. The final paragraph—the 7th—providing that the act shall not apply to cities having a population of over 80,000, does strongly suggest that the draftsman assumed that except for such proviso residents of cities of that size might be liable to the tax. Such a clause in an original enactment in the same language would doubtless be conclusive on the subject of the legislative intent. But in view of the fact that the amended section as it originally stood did not impose a tax on the residents of cities of the first class, and the other amendments made to it had no relation to that subject, we can not regard the addition of this essentially negative proviso as having the affirmative effect of making a change in the class of persons

liable for the tax. The measure originated in the house of representatives. As it was introduced, and as it was passed by that body, it contained no such proviso. The 7th paragraph was added by amendment on the motion of the senator from Wyandotte county (Senate Journal, 1917, p. 579), and appears to have been the result of a desire, through what was perhaps an excess of caution, to make it clear that nothing in the act affected in any way the city of Kansas City—the only city in the state having at that time more than 80,000 inhabitants. The amendment must be interpreted as merely declaratory of the fact that cities of that size were not affected, rather than as indicating a purpose to enlarge the scope of the bill as it had originally been drawn.

It follows that residents of cities of the first class are not liable to the tax, and the motion to quash the aternative writ must be sustained.