# BAKER v. DEPARTMENT OF REGISTRATION et al.

No. 5201.   Decided October 2, 1931.   (3 Pac. [2d] 1082.)

*De Vine, Howell & Stine, A. W. Agee,* and *Lewis J. Wallace,* all of Ogden, for plaintiff.

*Geo. P. Parker,* Atty. Gen., and *Byron D. Anderson,* Deputy Atty. Gen., for respondents.

ELIAS HANSEN, J.

The plaintiff, George W. Baker, has applied to this court for a writ of prohibition. His application is founded upon a verified complaint. He seeks to prohibit the department of registration of the state of Utah and its director, S. W. Golding, from revoking his (plaintiff's) license to practice his profession of a physician and surgeon. It is in substance alleged in the complaint filed in this court that plaintiff now is, and since the year 1894 has been, a duly licensed physician and surgeon of the state of Utah; that on or

about May 18, 1931, a verified complaint was filed with the department of registration of the state of Utah, charging the plaintiff herein with unprofessional conduct, viz., with, on May 13, 1931, in Weber county, Utah, attempting to produce a criminal abortion upon a named female person; that upon the filing of the complaint with the department of registration its director, S. W. Golding, issued a citation directing the plaintiff herein to appear before the department at a time and place stated and show cause why his license to practice his profession should not be revoked; that the citation so issued was duly served, and the plaintiff herein filed in the cause with the department his answer; that on June 27, 1931, a hearing was had before the department of registration and a committee of five physicians and surgeons; that the committee found that the plaintiff herein was guilty of the unprofessional conduct charged and that S. W. Golding as director of registration will, unless prohibited by this court, revoke plaintiff's license to practice his profession.

Upon the filing of the complaint this court issued its writ directing the department of registration and its director, S. W. Golding, to desist and refrain from any further proceedings in the cause against the plaintiff herein until the further order of this court and to show cause why the order should not be made permanent and absolute. The defendants have appeared and demurred to plaintiff's complaint upon the ground that it does not state facts sufficient to constitute a cause of action or to entitle plaintiff to the relief prayed.

The proceedings concerning which plaintiff herein complains were had pursuant to chapters 130 and 91, Laws of Utah 1921, as amended by chapters 49 and 58, Laws of Utah 1923. Further amendments were made to the acts by chapter 124, Laws of Utah 1925, and chapter 71, Laws of Utah 1927. The amendments of 1925 and 1927 have no bearing upon the questions presented for determination in this proceeding, and therefore such amend-

ments need not be here considered. So far as appears, the procedure prescribed by law was followed by the department of registration in the proceeding had against the plaintiff herein for the revocation of his license. The plaintiff does, however, allege in his complaint filed herein that "under the provisions of said act, five physicians had been appointed to take action and make report in writing, upon complaints charging physicians with unprofessional conduct, and at the time and place of said hearing one of said five persons did not appear, and thereupon the said S. W. Golding, acting as such director of registration, without any authority of law, appointed another person to act in his place, and the said five persons then present proceeded to hear the evidence in support of said complaint and of the answer, and upon the conclusion of said hearing made a report in writing recommending that the license of the plaintiff herein be revoked." It is urged by the plaintiff herein that the director of registration was not authorized to appoint a physician to act as a member of the committee instead of the regularly appointed physician who failed to appear at the hearing. The contention is not tenable. The act provides that the director of registration shall not exercise the functions and duties of the department of registration with respect to the granting or revoking of licenses of physicians and surgeons except upon the action and report in writing of five persons each of whom shall be a licensed practitioner of medicine and surgery in this state. The action or report in writing of a majority of the five persons constituting the committee "shall be sufficient authority upon which the director of registration may act." It is further provided in the act that "in making the designation of persons to act for the several professions, trades and occupations, the director shall give due consideration to recommendations by members of the respective professions, trades and occupations and by organizations therein, and the names of all persons so designated shall be submitted to the governor for confirmation or rejection, if confirmed, they shall serve until removed by the director."

"Whenever the director is satisfied that substantial justice has not been done, either in an examination or in the revocation of or refusal to renew a license, certificate or authority, he may order re-examinations or rehearings by the same or other examiners." Laws Utah 1923, chap. 49, p. 104, § 1. It will be observed that an appointment of a member of the committee made by the director must, before becoming effective, be confirmed by the Governor, but the director may, without the consent of the Governor or any one else, remove a member of the committee. No claim is made that the member of the committee who was appointed by the director to sit and hear the cause in the absence of one of the regular members was not qualified, or that the appointment was not confirmed by the Governor, or that plaintiff made any objection at the hearing to the member so appointed. Under such circumstances, the plaintiff may not avail himself of the claimed irregularity, especially upon an application for a writ of prohibition.

It is next earnestly urged on behalf of the plaintiff herein that the act which authorizes the department of registration to revoke the license of a physician and surgeon is unconstitutional. The constitutionality of the act is attacked upon two grounds, viz.: (1) That while the act provides that an "appeal to the courts may be had" from an order made by the director of registration revoking or refusing to renew the license of a physician and surgeon, no provision is made for the time within which the appeal shall be taken, nor the court or courts to which the appeal may be taken, nor the procedure that must be followed; (2) that the title of the act which creates the department of registration is defective in that it does not mention or refer to the revocation of licenses of physicians and surgeons to practice medicine.

In 1921 the Legislature of Utah (chapter 130, Laws of Utah 1921) "created a department of the state government to be known as the 'Department of Registration.'" Section 1. The department of registration, so created was by the

act given power "to exercise the rights, powers and duties heretofore exercised and vested by law in the following boards and commissions: State board of accountancy, State board of architecture, Utah state board of examiners of barbers, State board of dental examiners, State board of medical examiners, State board of examination and registration of hospital trained and graduate nurses, Utah state board of examiners in optometry, State board of pharmacy, Utah state board of veterinary medical examiners." Section 2. The act further provides that "the department of registration shall, whenever the several laws regulating professions, trades and occupations which are devolved upon the department for administration so require, exercise, in its name, but subject to the provisions of this Act, the following powers: * * * (f) Conduct hearings on proceedings to revoke or refuse renewal of licenses, certificates or authorities of persons exercising the respective professions, trades or occupations, and to revoke or refuse to renew such licenses, certificates or authorities." Section 3.

In 1923 the Legislature of Utah amended subdivision (f) last above quoted by adding thereto at the end thereof these words: "Provided that appeal to the courts may be had." Laws of Utah 1923, chap. 49, p. 105, § 1.

It is plaintiff's contention that the provision "that appeal to the courts may be had" clearly indicates an intention on the part of the Legislature that an appeal lies from an order of the department of registration revoking the license of a physician and surgeon, but that such intention cannot be given effect because the act fails to designate the court or courts to which the appeal may be taken, and fails to fix the time within which the appeal shall be taken, and likewise fails to prescribe the procedure that must be followed in perfecting the appeal. And finally it is urged on behalf of the plaintiff that because the act grants the right of an appeal, but makes no provision for the exercise of such right, the entire act is unconstitutional and void. Counsel for the defendants concede that the part of the act which provides for an appeal is so defective in

the particulars urged by the plaintiff, that such part of the act may not be given effect, but that the remainder of the act is not rendered unconstitutional because of the inadequate provisions for an appeal. Thus counsel for the respective parties to this proceeding are agreed that there can be no appeal from an order of the department of registration notwithstanding the Legislature has provided that "appeal to the courts may be had" from such order. We do not agree with the contention thus urged on the one hand and conceded on the other. It is a cardinal principle of our system of government that courts must, when possible within prescribed rules of construction, give effect to the intention of the Legislature as expressed in its enactments. The parties to this proceeding make no claim that the duty of courts is otherwise, but it is urged that when an enactment is so uncertain that the courts are unable to determine with any reasonable degree of certainty what the Legislature intended, or it is so incomplete that it cannot be executed, then and in such cases, there is no other course open but to condemn such an enactment as void for uncertainty. That courts may not usurp the functions of the lawmaking powers by giving a meaning to its enactments where no meaning exists, or by substituting conjectural interpretation for judicial exposition, may readily be conceded as applied to substantive law, but courts not infrequently are required to, and do, adopt rules of procedure in furtherance of the exercise of both original and appellate jurisdictions, especially where such jurisdiction is conferred by constitutional provisions. If either original or appellate jurisdiction is, by constitutional provisions, conferred upon a court, the failure of the Legislature to provide the manner in which such jurisdiction shall be exercised cannot defeat the jurisdiction so conferred. A leading case upon the subject is that of *People* v. *Jordan,* 65 Cal. 644, 4 P. 683, 684. The views we entertain are there so clearly expressed that we quote at length from the opinion:

"The legislature has prescribed no procedure for an appeal to this court in criminal actions, except 'in criminal actions amounting to

felonies.' Penal Code, 1235. But the supreme court has appellate jurisdiction 'in all criminal cases prosecuted by indictment or information,' etc. Const. art. 6, § 4. The same section of the constitution provides: 'The court shall also have power to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and all other writs necessary or proper to the complete exercise of its appellate jurisdiction.' The power to issue the writs specified, or any other writ, in a case where it may be necessary or proper to resort to it to secure the complete exercise of the appellate jurisdiction of the court, would exist had the constitution been silent on the subject. It may be conceded, for our present purposes, that where machinery has been supplied for the employment of its jurisdiction by legislative enactment, such machinery must be adopted or accepted by the court. But when a certain jurisdiction has been conferred on this or any court it is the duty of the court to exercise it; a duty of which it is not relieved by the failure of the legislature to provide a mode for its exercise. In the absence of any rules of practice enacted by the legislative authority, it is competent for the courts of this state to establish an entire code of procedure in civil cases, and an entire system of procedure in criminal cases, except that criminal actions of a certain class must be prosecuted by indictment or information. Const. art. 1, § 8.

"While the English courts have recognized the power of parliament to create a practice, or to amend an existing practice, the main body of the practice was established by rules, or was the outgrowth of customs recognized and sanctioned by the courts at Westminster. Before the 1 Wm. IV, c. 70, the course of proceedings in the superior courts of law, as well respecting practice as pleading, was regulated by one of four authorities, viz: First, by general statutes; secondly, by express written rules; thirdly, by prior decisions; and, fourthly, by usage. The statutes in general equally applied to all those courts, but the express rules were made by the judges of each court from time to time, and only applied to the proceedings of that particular court; and the decisions and usages were principally confined to a particular court. Such usages constituted what might be termed the common law of the court, as distinguished from the statutes and written particular rules. 3 Chit. Gen. Pr. 50. Long usage in the practice of the courts, or of a particular court, may be considered the common law of the court; for the acquiescence in constant proceedings, as well by the judges as its experienced officers, denotes that it is reasonable, and has not been found objectionable, because if it had it would soon have produced an immediate change; the judges of each court have implied power to alter any inconvenient practice when they think fit. Id. 56. In a conservative spirit Mr. Chitty adds:

" 'It is important that such usage should be adhered to until expressly altered by statute or rule, because, otherwise, practitioners, relying on the known practice, would be misled, if there were any sudden unpromulgated changes; and the same principle, indeed, weighs against any change, unless imperatively called for by strong necessity,' etc.

"Doubtless, when a practice with respect to any procedure as to which the statutes are silent has been once adopted by this court, the protection of practitioners would demand that no change should be made except by rule, duly published. But the authority of any usage is derived from its recognition and sanction by the court, and we cannot decline to take cognizance of a matter clearly within our jurisdiction because the mode of procedure applicable to it has not been regulated by statute, written rule, or precedent. In such case it is our duty to create a precedent. When this is done we do not recognize an existing usage. But as the usages of the English courts, of however long standing, had no innate force as rules or laws, but derived their sanction solely from the court which permitted them to be followed, and which had power to alter them at any time, so this court (the statutes being silent) may adopt or ratify the practice resorted to on the first occasion when the exigencies of a cause require reasonable and unprecedented practice to be resorted to. If casus omissus in the procedure established by law and written rules is called to our attention in advance, we may by rule provide for it; if not, when the case is presented, we must adopt for it an appropriate mode, in itself reasonable, which is to be followed in like cases until altered by statute or rule. The power of courts to establish a system of procedure by means of which parties may seek the exercise of their jurisdiction, at least when a system has not been established by legislative authority, is inherent. A fortiori must this be so in California, where the judicial is a separate department of the government under our written constitution.

"Applying these principles to the case in hand, the defendant here was prosecuted by indictment, and the legislature has failed to provide any machinery for taking an appeal from a judgment for or against him. We are confronted by the duty imposed by the constitution of reviewing the proceedings of the court below. We entertain no doubt that we have the power of declaring, and that it is our duty to declare, how this and like cases may be brought here for review. We may issue to the lower court a writ of mandamus or certiorari, or we may frame and issue any other appropriate writ. But our power is not limited in the exercise of our appellate jurisdiction to the employment of technical writs. We may by rule establish any appropriate practice for the bringing here a record or proceeding in

the court below. Still further, we possess the power, as necessarily incident to our jurisdiction, of recognizing as proper any mode of procedure already adopted for bringing a cause before us."

To the same effect are the following cases: *State* v. *Moores,* 56 Neb. 1, 76 N. W. 530; Id., 58 Neb. 285, 78 N. W. 529; *Finlen* v. *Heinze et al.,* 27 Mont. 107, 69 P. 829, 70 P. 517. A different rule has been applied where jurisdiction is conferred by statute. *State* v. *Hanousek,* 19 Ohio Cir. Ct. R. 303, 10 Ohio C. D. 516; *Midwest Hotel Co.* v. *State Board of Equalization,* 39 Wyo. 461, 273 P. 696. There are, however, cases which seem to make no such distinction. *Blair* v. *Coakley,* 136 N. C. 405, 48 S. E. 804.

When the Legislature provided that "appeal to the courts may be had," it is reasonably clear that it intended an appeal to the district court and from the district court to this court. It will be noted that the plural "courts" is used in the act. There are no other courts vested with jurisdiction of the subject-matter of such an appeal by either our state Constitution or our statutory law. Our state Constitution, article 8, provides:

"Sec. 4. The Supreme Court shall have original jurisdiction to issue writs of mandamus, certiorari, prohibition, quo warranto and habeas corpus. Each of the justices shall have power to issue writs of habeas corpus, to any part of the State, upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself or the Supreme Court, or before any district court or judge thereof in the State. In other cases the Supreme Court shall have appellate jurisdiction only, and power to issue writs necessary and proper for the exercise of that jurisdiction. The Supreme Court shall hold at least three terms every year and shall sit at the capital of the State."

"Sec. 7. The District Court shall have original jurisdiction in all matters civil and criminal, not excepted in this Constitution, and not prohibited by law; appellate jurisdiction from all inferior courts and tribunals, and a supervisory control of the same. The District Courts or any judge thereof, shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition and other writs necessary to carry into effect their orders, judgments and decrees, and to give them a general control over inferior courts and tribunals within their respective jurisdictions."

"Sec. 9. From all final judgments of the district courts, there shall be a right of appeal to the Supreme Court. The appeal shall be upon the record made in the court below, and under such regulations as, may be provided by law. In equity cases the appeal may be on questions of both law and fact; in cases at law the appeal shall be on questions of law alone. Appeals shall also lie from the final orders and decrees of the Court, in the administration of decedent estates, and in cases of guardianship, as shall be provided by law. Appeals shall also lie from the final judgment of justices of the peace in civil and criminal cases to the District Courts on both questions of law and fact, with such limitations and restrictions as shall be provided by law; and the decision of the District Courts on such appeals shall be final, except in cases involving the validity or constitutionality of a statute."

It will be noted that the district court is by article 8, § 7, of the Constitution, given appellate jurisdiction from all inferior courts and tribunals, and that this court is likewise by article 8, § 9, given appellate jurisdiction of all final judgments of the district court. In connection with the constitutional provisions granting the district court and this court appellate jurisdiction, the provision of our statute relative to the power of courts to adopt rules of procedure are worthy of note. Comp. Laws Utah 1917, § 1813, provides:

"When jurisdiction is, by statute, conferred on a court or judicial officer all the means necessary to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the statute or of the codes of procedure."

This court in the case of *West Cache Sugar Co.* v. *Hendrickson et al.*, 56 Utah 327, 190 P. 946, 11 A. L. R. 216, held that the district court had full power and authority under the section of our statute just quoted to issue an order requiring the garnishee to open a safety deposit box in a bank for the purpose of reaching its contents by the process of garnishment. In the case of *State* v. *Morgan*, 23 Utah 212, 64 P. 356, 361, it is said that:

"When the wrong is the violation of constitutional rights, the legislature has no power to prohibit, or substantially impair, all remedies, ,as to do so would be a violation of the constitution.

"In the absense of any legislative remedy for such wrongs, the courts will resort to the common law, if it affords a remedy, and, if it does not, then the courts, by virtue of their inherent power, and their duty in criminal cases to guard the rights of persons, will, if if possible, devise new remedies, as has been done from a very remote period of time, by equity courts, to meet new conditions, and supply remedies for wrongs when none already existed."

In the case of *Watts* v. *Greenwood,* 49 Utah 118, 162 P. 72, in construing Comp. Laws Utah 1907, § 720 (now section 1813, Comp. Laws Utah 1917), it is said:

"Giving courts incidental and necessary jurisdiction to carry out the jurisdiction conferred by express statute, the court has power, where a mortgagor makes application under said section 153, and it appears that the mortgage property is perishable or that it is live stock and that the cost of feeding and keeping it pending the action would be great, to call on the mortgagor to consent to sale, or to require indemnity bond from him or order the property sold, or otherwise to protect the rights of the parties."

The quotation is from the syllabus, which fairly reflects the views expressed by the court in the opinion. While the cases just cited from this jurisdiction deal with the power of a court to, in the absence of legislative provisions, prescribe proceedings in, a cause pending before it, there is nothing in the language of section 1813 which limits the power of the court to such cases. The statute applies alike to all cases where jurisdiction is conferred by statute without regard to whether such jurisdiction is original or appellate.

May it be said that the department of registration, when exercising the functions of hearing and determining whether or not the license of a physician and surgeon shall be revoked, is (within the meaning of article 8, § 7, of our State Constitution) a tribunal inferior to the district court? If the question requires an affirma-

tive answer, then and in such case it follows that the district court has appellate jurisdiction over its decisions in such respect. Prior to the act of 1921 the power to revoke a certificate or license of a physician and surgeon was vested in the district court. Comp. Laws Utah 1917, § 4447. The right to practice medicine is a valuable property right, and the proceeding to revoke such right is essentially the exercise of a judicial function. While the department of registration is primarily an administrative body, it exercises judicial functions when it undertakes to hear and determine whether or not a license of a physician and surgeon shall be revoked. It is, while exercising such functions, essentially a tribunal. That the department of registration is inferior to the district court is not open to serious doubt. Our district courts are courts of general jurisdiction. The department of registration is a tribunal of limited jurisdiction. In providing that an appeal may be had to the courts, it is reasonably clear that the Legislature intended that the department of registration should be regarded as a tribunal inferior to the district court and to this court and as such the district court and this court are vested by the provisions of article 8, §§ 7 and 9, of our State Constitution, with appellate jurisdiction over its decisions when a proceeding is had to revoke the license of a physician and surgeon.

Thus, in the absence of any specific legislative provision regulating the procedure that shall be followed in appeals from a judgment or order of the director of the department of registration in revoking or refusing to revoke the license of a physician and surgeon, this court has the authority, and it is its duty, to direct the procedure that shall be followed. In pursuance of such authority and duty, we direct that the procedure to be followed until otherwise provided by law or rules of this court shall be: In an appeal from the department of registration to the district court, the procedure and practice prescribed by law for appeals in civil cases from final judgments of a justice of the peace to the district court in so far as such procedure and practice is applicable, and upon an appeal from the dis-

trict court to this court the procedure and practice prescribed by law and the rules of this court in civil cases in so far as such procedure and practice is applicable.

It is further urged that the act under review does not designate the district court to which an appeal from the department of registration may be taken. Our Code of Civil Procedure contemplates that where a defendant is a resident of this state a cause of action against him shall be tried either in the county where he resides or in the county where the cause of action arose. In harmony with these provisions of our statutes, an appeal from a judgment or order of the director of the department of registration revoking or refusing to revoke a license of a physician and surgeon shall, until otherwise provided by law, be to the district court of the county where the defendant resides or to the county wherein the accused is alleged to have committed the act or one of the acts of unprofessional conduct charged, subject, however, to the right to a change of venue as by law provided in civil cases.

It is further suggested in the briefs of counsel that the Legislature, in providing in the act under review that appeal to the courts may be had, intended merely that a writ of certiorari, prohibition, or mandamus may issue to review, prohibit, or direct the action of the department of registration. The suggestion is without merit. There was no occasion for the Legislature to grant to the district courts or to this court authority to issue such writs. The authority to issue these writs is conferred by our state Constitution, and hence exists independent of legislative enactment. Moreover, an appeal as generally understood and as applied to our practice is a remedy which in many respects is quite unlike any of the common-law or constitutional writs mentioned.

"In its original and strictly technical sense, an appeal was a proceeding introduced into equity practice from the civil law, by which the whole cause was removed from a lower to an appellate court, and there tried de novo upon evidence newly introduced, being subjected to a new and final determination as if it had not been tried before, and

without any reference to the conclusion of the inferior court." 3 C. J. 314, 315.

Under the practice prevailing in this state, a cause which is appealed to the district court from an inferior court or tribunal is tried de novo in the district court. When the Legislature provided in the act under review for ▮▮▮ an appeal to the courts, it doubtless had in mind such practice and intended that the appeal provided for should be in accordance therewith. We are thus of the opinion, and so hold, that when an appeal is had to the district court from an order of the director of the department of registration revoking or refusing to revoke a license of a physician and surgeon, the district court is required to try the cause de novo.

The title which plaintiff claims is so defective as to render part of chapter 130, Laws of Utah 1921, unconstitutional reads as follows:

"An Act creating a department of registration; prescribing the powers and duties thereof; providing for the appointment of a director of such department and fixing the salary of such director; providing for the licensing of members of the various occupations, trades and professions devolving upon the department of registration for administration and the annual renewal of licenses and designating persons of prescribed qualifications to report concerning such occupations, trades, and professions and prescribing the qualifications of such persons; providing for fees for licenses and renewals and prescribing a penalty for practicing without a license."

The constitutional provision which plaintiff contends the title just quoted offends against provides that:

"Except general appropriation bills, and bills for the codification and general revision of laws, no bill shall be passed containing more than one subject, which shall be clearly expressed in its title." Constitution of Utah, art. 6, § 23.

It is urged by plaintiff herein that the language of the title above quoted does not sufficiently indicate that the act deals with or authorizes the department of registration to revoke the license of a physician and surgeon to practice medicine. The provisions of article 6, § 23, of our State

Constitution, have been under review by this court in numerous cases since its adoption in 1896. *Ritchie* v. *Richards*, 14 Utah 345, 47 P. 670; In re *Monk*, 16 Utah 100, 50 P. 810; *Nystrum* v. *Clark*, 27 Utah 186, 75 P. 378; *Marioneaux* v. *Cutler*, 32 Utah 475, 91 P. 355; *Edler* v. *Edwards*, 34 Utah 13, 95 P. 367, 368; *Salt Lake City* v. *Wilson*, 46 Utah 60, 148 P. 1104; *State* v. *Hammond*, 46 Utah 249, 148 P. 420; *Martineau* v. *Crabbe*, 46 Utah 327, 150 P. 301; *State* v. *McCornish*, 59 Utah 58, 201 P. 637; *State* v. *Olson*, 59 Utah 549, 205 P. 337; *Mutart* v. *Pratt*, 51 Utah 246, 170 P. 67; *Utah State Fair Ass'n et al.* v. *Green et al.*, 68 Utah 251, 249 P. 1016.

According to the great weight of authority, constitutional provisions similar to article 6, § 23, of our State Constitution, are mandatory. Cooley, Constitutional Limitations (8th Ed.) vol. 1, p. 311; 16 C. J. 74. This court, as will be found from an examination of the cases heretofore cited, is committed to the view thus supported by the great weight of authority. After a review of various constitutional provisions similar to the provision of our state Constitution now being considered, the able author of Cooley's Constitutional Limitations (8th Ed.) vol. 1, at pages 295-297, has this to say with respect to such provisions:

"It may therefore be assumed as settled that the purpose of these provisions was: first, to prevent hodge-podge or 'log-rolling' legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire.

"The general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible."

This court, in the case of *Edler* v. *Edwards*, supra, announced the following general rules as guides in determining whether or not a given statute meets the requirements of article 6, § 23, of the Constitution:

"(1) That the constitutional provision now under consideration should be liberally construed; (2) that the provision should be applied so as not to hamper the law making power in framing and adopting comprehensive measures covering a whole subject, the branches of which may be numerous, but where all have some direct connection with or relation to the principal subject treated; (3) that the constitutional provision should be so applied as to guard against the real evil which it was intended to meet; (4) that no hard and fast rule can be formulated which is applicable to all cases, but each must to a very large extent be determined in accordance with the peculiar circumstances and conditions thereof, and that the decisions of the courts are valuable merely as illustrations or guides in applying these general rules. Moreover, it is now established beyond question that unless the invalidity of a particular law in question is clearly and manifestly established the law must prevail as against such an objection."

Applying these general rules to the instant case, it is reasonably clear that the part of the act under review is not vulnerable to the objection urged against it. No claim is or can well be made that the power to revoke licenses is not germane to the general purposes of the act as indicated by its title. The title of the act clearly indicates that persons engaged in various occupations, trades, and professions shall be licensed by and subject to the administration of the department of registration. The title also indicates that the licenses of persons engaged in various occupations, trades, and professions shall be annually renewed. As stated in 21 R. C. L. p. 366, "there is no real distinction between refusing and revoking a license, the same body which may be vested with power to grant, or refuse to grant, a license may also be vested with power to revoke it." Numerous cases in support of the text will be found collated in 1 L. R. A. (N. S.) 811. There is still less distinction between refusing to renew and revoking a license. The power to license and regulate a given trade, profession,

or occupation may well carry with it the power to revoke the license so granted when the licensee fails to comply with prescribed rules and regulations. Moreover, the authority of the department of registration to revoke, for cause, the license of a physician and surgeon is not dependent solely upon the provisions of Laws of Utah 1921, chap. 130. Laws of Utah 1921, chap. 91, deals with the subject of the practice of medicine and surgery. The title to that act reads as follows:

"An Act to regulate the practice of medicine and surgery in all their branches and any system or method of treating human ailments without the use of drugs or medicines and without operative surgery, and obstetrics, and to license the same; providing for the examination of applicants for licenses; determining the qualifications of applicants for licenses and fixing minimum standards of professional and preliminary education; providing for the issuance of licenses without examination in certain cases; refusing licenses to applicants who are not of good moral character and for 'unprofessional conduct,' and providing for a hearing in such cases; providing for the annual registration of practitioners and the recording of licenses; fixing license fees; defining what is meant by 'practicing medicine and treating human ailments,' and 'unprofessional conduct'; providing for the revocation of licenses for 'unprofessional conduct'; imposing penalties for the violation of this Act; validating and continuing in force licenses held when this Act shall take effect; and repealing Sections 4440, 4441, 4442, 4443, 4444, 4445, 4446, 4447, 4448, 4449, 4450, 4451, 4452, 4453, 4454, 4455, 4456, 4457, of Title 85, Compiled Laws of Utah, 1917, and all Acts or parts of Acts in conflict therewith."

It will be noted that the title of chapter 91, Laws of Utah 1921, clearly indicates that provision is therein made "for the revocation of licenses for 'unprofessional conduct.'" It is provided in that act that: "The words 'unprofessional conduct' as used in this Act are hereby defined to mean any of the following acts, to wit: 1. Offering, or attempting to procure or aid or abet in procuring a criminal abortion." Section 17. The act also provides for the procedure that shall be followed when it is sought to revoke the license of a physician and surgeon and that the same shall be had before the department of registration. Chapter 91 was ap-

proved by the Governor and became effective after chapter 130. Thus, even though the title to chapter 130, Laws of Utah 1921, should be held to be defective in the particular urged by the plaintiff herein, nevertheless chapter 91 clearly grants authority to the department of registration to revoke the license of a phlysician and surgeon for good and sufficient cause.

It is finally urged on behalf of the plaintiff herein that the provision for the revocation of a license of a physician and surgeon applies only to licenses which have been issued by the department of registration and does not apply to a license which was issued before the creation of that department. In support of such contention reliance is had upon the provision of Laws of Utah 1921, chap. 91, § 16, as amended by Laws of Utah 1923, chap. 58, § 1, where it is provided that: "Whenever any licensed practitioner under this Act is guilty of 'unprofessional conduct,' as the same is defined herein, then the license of such practitioner shall be revoked or canceled by the department of registration. * * * " It is argued that as plaintiff was not licensed "under this Act," he is not subject to its provisions. Whatever merit there might have been to plaintiff's claim had the section relied upon by him been the only provision of the act, certain it is that his contention cannot prevail in view of other provisions of the law dealing with the revocation of the license of physicians and surgeons. Thus, Laws of Utah 1921, chap. 91, § 21, provides:

"All licenses heretofore issued by the state board of medical examiners of the state of Utah, authorizing the holder thereof to practice medicine in this state, and all licenses lawfully held at the time of the taking effect of this Act shall continue valid and in force and effect unless revoked or cancelled under the provisions of this Act."

Laws of Utah 1921, chap. 130, § 2, subd. b, provides:

"The department of registration shall have power: To issue certificates and licenses to any of the members of the professions, trades and occupations which are now, or hereafter may be, devolved upon the department of registration for administration; to collect for each certificate or license a fee not exceeding $50.00; to require the annual

renewal of such certificates and licenses; and to collect for each such renewal a fee of not exceeding $5.00."

Laws 1921, c. 130, § 11, as amended by Laws 1923, c. 49, §2, provides that if the annual license fee is not paid the license shall be revoked. Laws 1921, c. 130, § 3, subd. f, as amended by Laws 1923, c. 49, § 1, grants to the department of registration the power to "conduct hearings on proceedings to revoke or refuse renewal of licenses, * * * of persons * * * and to revoke or refuse to renew such licenses" without regard to when such licenses were issued. It is improbable, to say the least, that the Legislature intended that one rule of conduct should be applied to physicians and surgeons who are licensed by the department of registration and a different rule applied to those who secured their licenses before the department was created. From what has been said it follows that the plaintiff is not entitled to the writ prayed for.

It is therefore ordered that the temporary writ heretofore issued, restraining the department of registration and its director from revoking the license of the plaintiff, be and the same is vacated and set aside, and plaintiff's application for a permanent writ of prohibition is denied.

STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., did not participate herein on account of illness.