## MOORMEISTER v. GOLDING, Director of
## Registration Department.

No. 5294.  Decided November 13, 1933.  (27 P. [2d] 447.)

*Geo. P. Parker,* Atty. Gen., and *Byron D. Anderson,* Deputy Atty. Gen., for appellant.

*Irvine, Skeen & Thurman,* of Salt Lake City, for respondent.

COX, District Judge.

This case comes before the court upon an appeal from an order overruling the demurrer filed to the complaint. Two questions are presented: First, does the complaint in this case state a cause of action entitling the respondent to equit-

able relief? Second, does the statute providing for hearings before the department of registration and the rules laid down by this court for appeal, provide for a speedy and adequate remedy at law, so as not to entitle an applicant to injunctive relief?

The complaint alleges the act providing for the department of registration; that S. W. Golding had been and was at the time of the filing of the complaint in this case the director of said department, and vested with the authority to exercise its powers; that one of his duties was to conduct hearings and proceedings to revoke licenses and certificates theretofore issued and held by physicians and surgeons in the state of Utah; that the plaintiff therein was a licensed physician engaged in the business and practice as a physician and surgeon in Salt Lake City; that he earned and made his living by this practice; and that this right was a valuable property right; that on and prior to the 31st day of January, 1930, the defendant and one E. B. Harrison, who was then acting as deputy of registration confederated and determined upon and adopted a course of procedure for the purpose of revoking the license of the plaintiff to practice as a physician and surgeon in the state of Utah.

That pursuant to said plan, on the 31st day of January, 1930, the defendant, S. W. Golding, as state director of registration, caused a complaint to be filed against the plaintiff, charging a criminal abortion upon the female named in the complaint; that said complaint was signed by E. B. Harrison and subscribed and sworn to before S. W. Golding; that on or about the said date the defendant, as director of registration, caused a citation to be issued against the plaintiff, citing him to appear at a certain time and place for unprofessional conduct in performing a criminal abortion, contrary to the laws of the state of Utah, and directing him to file a written answer, under oath, within twenty days after service of the citation, the citation being signed by S. W. Golding, director of the department of registration of the state of Utah.

That before the time to answer expired, the plaintiff therein filed before the department of registration a demurrer, general and special, challenging the right of the defendant, Golding, to conduct the hearing on said complaint, because he was in effect both complainant, prosecutor and court; that about the same time, and without waiving the demurrer, he filed a motion for change of judge, and affidavits in support thereof, setting out that the defendant, Golding, was disqualified, because he acted as complainant, prosecutor and court, and because of bias and prejudice against the plaintiff; that his mind was made up as to the guilt of the defendant prior to the time of the filing of the complaint regardless of any evidence submitted; and that the plaintiff could not have a fair and impartial trial before the said Golding. That the defendant wholly disregarded the said motion and demurrer, and refused to pass upon the same, refused to disqualify himself, and insisted upon proceeding with said hearing.

Paragraph 7 of the complaint alleges in substance the bias and prejudice of the defendant, Golding, and of his assistant, E. B. Harrison; that the defendant, Golding talked about the case before the hearing, and expressed his opinion; that before the hearing the defendant Golding and said E. B. Harrison sought to intimidate and coerce persons to appear and testify against the plaintiff, that he would have their testimony taken in the form of depositions, and that they would not have to appear in public. Paragraph 8 alleges that on March 31, 1930, the defendant, Golding, caused to be held a proceeding in which he purported to take the deposition of one Lou Thurgood. Paragraph 9 alleges that said deposition was not entitled to be considered: (a) That there is no authority by statute or at common law for the taking and using of a deposition in said proceedings, or in proceedings of such character, and the department of registration has no authority or jurisdiction to permit the taking of, or the using of, a deposition of a witness in a proceeding of such character, and the board of physicians constituting

a part of the department has no right or authority to consider as evidence, or for any other purpose, a deposition. (b) That the said deposition so proposed to be used in said proceeding shows on its face that after the same had been transcribed by the reporter into typewriting, it had been altered and erased in numerous places by some person or persons unknown to this plaintiff, the effect of such alterations and erasures being to change in important and material particulars the testimony of said witness. Several of such erasures and changes are set forth in the complaint, but it is not necessary to set them out in detail here. Under subparagraph (c) plaintiff alleges that the officer taking the deposition failed to comply with the requirements of section 7180, Comp. Laws of Utah 1917, and particularly that the said deposition was not by said officer inclosed in an envelope or wrapper and sealed; that it was not directed to the clerk of the above-entitled department, nor was it mailed to or delivered to the clerk of said department, or to any court, or to any person that the parties had agreed upon. (d) That during the taking of said alleged deposition, the notary permitted a stranger to said proceedings to be present who was not an attorney, and did not represent either of the parties to said proceeding, said person being the husband of the witness, and permitted him to interrupt the cross-examination and interfere with the proceedings. That the person before whom the deposition was taken refused to interfere and instructed the witness that she could refuse to answer if she so desired. (e) That the notary at numerous times instructed the witness she did not have to answer certain questions, and interfered with the proceedings, and by such conduct plaintiff's counsel was prevented from fairly and fully examining the said witness on material matters. (f) That the witness testified she had been directed to go to this plaintiff by a girl friend of hers who had been to plaintiff; that for the purpose of laying the foundation for impeaching the witness, she was asked to give the name of this girl friend; that the husband of the

witness interrupted and said, among other things: "You may expect to hear from me if you don't behave yourselves." That thereupon the notary instructed said witness she could refuse to answer if she wanted to; that thereupon the witness refused to answer, or to give the name of the alleged person that by such conduct plaintiff was deprived of the right to pursue said examination further for any purpose, and particularly for the purpose of attacking her credibility. (g) That on numerous other occasions the notary kept telling the witness she could refuse to answer. (h) That no showing was made at any time before or at the time of the hearing by the plaintiff, the state of Utah, or the department of registration, to secure the attendance of the witness whose deposition was taken at said hearing, but that at the time of said hearing, by testimony under oath, it was made to appear that immediately before said deposition was offered in evidence, the defendant and the department of registration, and the state of Utah by its Deputy Attorney General, and each of them, knew that said witness whose deposition was taken was within the jurisdiction of said department; that they had been in communication with and in personal contact with her in Salt Lake City and elsewhere within forty-eight hours of the time they intended to offer said deposition; that they, and each of them, knew of the desire of the plaintiff to cross-examine said witness; that they knew a subpoena had been issued to secure the attendance of said witness for the purpose of further examination; that when an attempt was made to serve the subpoena on said witness whose deposition was taken, the person attempting to make the service was unable to locate her at her place of residence; that he was informed that she was advised to disappear until after the hearing referred to. That the said E. B. Harrison had visited the place of residence of the witness about the time the attempt was made to serve said subpoena upon her, and had a talk with her. That the said Harrison and the attorney for the department of registration talked with the witness in Salt Lake City

and elsewhere immediately preceding the hearing and after the said motion to suppress the said deposition had been served and filed. Notwithstanding all these facts, no effort was made to procure the attendance of the witness whose deposition was taken at said hearing. That the department and the state of Utah could have secured the attendance of said witness at said hearing had they desired, by serving a subpoena upon her in Salt Lake City.

Paragraph 10 alleges that on August 18, 1930, there was filed a motion to suppress the deposition on the grounds set out under paragraphs (a), (b), (c), (d), (e), (f), and (g) ; that the defendant therein notified the plaintiff that he intended to disregard the motion; that the plaintiff offered and requested to be heard; that the defendant declined to hear him on the motion; that the said deposition would be used at the hearing on August 20, 1930, at the time of hearing on the complaint and citation issued by the defendant; notwithstanding the objections above made, the defendant called five physicians selected and appointed by him to listen to such evidence as he chose to permit to be presented to them; that he failed to administer any oath to the said physicians, and permitted them to act as trier of the fact without being put under any oath whatever. That the plaintiff appeared and protested against the proceedings and the use of the deposition, and renewed the motion to suppress the deposition.

That the plaintiff, Moormeister, then called E. B. Harrison and the attorney representing the department of registration as witnesses; that both parties testified under oath that they had made no effort to secure the witness upon said hearing; that they had each been in personal contact with her in Salt Lake City within forty-eight hours of the time said cause was called for hearing; that they had made no effort to procure her attendance, although they knew the plaintiff was seeking to procure her attendance to testify; that the plaintiff had made a motion to suppress the deposition; that the motion was again renewed to suppress

the deposition; that notwithstanding this, the defendant and the physicians selected by him proceeded with said hearing and received and admitted in evidence the said deposition; that no other or different evidence of any character whatsoever was introduced in said hearing in support of said complaint; that by such conduct, the defendant acted in a biased and prejudiced manner, made arbitrary and biased rulings against the plaintiff, and prevented him from having a fair and impartial trial.

That while said E. B. Harrison, assistant to the defendant, was a witness, he was asked the following questions:

"Q. Are you acquainted with the witness Mrs. Lou Thurgood? A. Yes sir.

"Q. When did you last see the witness?"

An objection was interposed by the Attorney General as incompetent, irrelevant, and immaterial, and the following proceedings took place following this:

"Mr. Irvine: Are you going to attempt to use her deposition?

"Mr. Anderson: Indeed I am.

"Mr. Irvine: Then I claim the right to ask these questions. The questions will be directed to the whereabouts of this woman.

"The Director: The objection is sustained.

"Mr. Irvine: The question was 'When did you last see Mrs. Thurgood?'

"The Director: The objection is sustained."

By this arbitrary ruling, plaintiff was prevented from showing the whereabouts of said witness. On further examination, the witness stated:

"Q. Did you communicate with the witness or her husband at Brigham City last Monday? A. I talked to her."

The plaintiff further alleges that on Monday an officer attempted to subpoena the witness at her home in Brigham City, and that the officer in his return stated that the person living in the house where the witness lived had warned the witness and her husband to be absent from Brigham City two or three days; that thereupon the plaintiff's counsel attempted to interrogate the witness as to his communication

with said Lou Thurgood on this day; and that the defendant arbitrarily refused this right. Plaintiff further alleges that the following question was asked E. B. Harrison, assistant to the defendant:

"Q. You have made no effort to secure her attendance as a witness here today? A. No."

The complaint further alleges that changes were made in the deposition without notice to the plaintiff, or his attorney, which changed the effect of the testimony of the witness; that the witness was permitted to state her conclusions; that the plaintiff's attorney moved to strike this from the deposition at the time it was presented; and that the defendant arbitrarily refused so to do.

That the physicians selected by the defendant at the conclusion made a report in writing, recommending the revocation of the license of the plaintiff to practice medicine in the state of Utah; that the defendant has declared his intention to revoke said license; that said license is a valuable property right; that if it is revoked, it will destroy his legitimate practice of medicine and good will, and will destroy this valuable property right, and cause plaintiff to suffer irreparable damage and loss; that plaintiff has no speedy or adequate remedy at law and is entitled to a fair and impartial trial before a fair and impartial tribunal, and is entitled to be confronted by the witnesses against him.

That the acts creating the department of registration are unconstitutional and void, and against the Constitution of the United States; that provisions of the statute are too indefinite and ambiguous; that there is sufficient right of appeal provided for; that there is no provision for the stay of execution, or judgment, pending an appeal, or a review, and no provision for the director to certify a record of his proceedings; that the director has no jurisdiction to revoke a license issued to any person prior to the passage and approval of the acts of the Legislature of the State of Utah creating the Department.

Wherefore the plaintiff prays for a permanent injunction to restrain the defendant from revoking the license of the respondent.

This court has heretofore held in the case of *George W. Baker* v. *Department of Registration,* 78 Utah 424, 3 P. (2d) 1082, that the act creating the department of registration is constitutional, and that the director of the department of registration has the right to conduct hearings.

In this case the complaint alleges that there was no other or different competent legal evidence of any character introduced at the hearing except the deposition. Upon the question of the deposition it is alleged in the complaint, and admitted by the demurrer, that there is no authority either by statute or common law for the taking and use of a deposition in a hearing before the department of registration, and no authority for the department of registration, or authorization to permit the taking of a deposition or the use of a deposition of a witness in a proceeding of this character where the evidence is submitted to the board of physicians.

A careful examination of chapter 130, Laws of Utah 1921, and also as amended by chapter 49, Laws of Utah 1923, which creates and sets up the department of registration, will disclose that the acts do not confer upon the Department the right to take or to use a deposition in a proceeding had before it. However, under section 5 of that chapter, the director of the department of registration is given the power to administer oaths and conduct hearings, and, under the seal of the Department, to subpoena witnesses. This is the only provision which confers any authority upon him to conduct the hearing alleged to have been had in this case.

It is a well-settled rule of law that the right to take a deposition in an action at law is entirely statutory. The early common-law courts were powerless to procure testimony by deposition, except by a resort to chancery or by the consent of the parties. It is true, however, that from a very early

date courts of equity exercised the power to procure a deposition and to issue commissions for that purpose. However, it is well recognized that the right to use depositions, or to confer commissions for the taking of depositions, rests within the power of the Legislature of any state to confer the authority on a particular court, or board, or quasijudicial tribunal, to use depositions and to issue commissions for the taking of depositions. 18 C. J. §§ 2, 3, and 4, pp. 606, 607.

It is further well settled that statutes in derogation of common law are strictly construed, consequently the authority of the court or any board or commission or department to procure evidence by deposition, and to use the same, must be clearly conferred and authorized by statute. The power to issue a commission to take a deposition, or to use the same, is not implied from the power conferred upon a board or commission to compel the attendance of and to examine witnesses, but depends entirely upon authorization by statute. 18 C. J. § 22, p. 618; *In re Martinelli*, 219 Mass. 58, 106 N. E. 557; *Paddock* v. *Kirkham*, 102 N. Y. 597, 8 N. E. 214; *In Matter of Spencer*, 137 App. Div. 333, 122 N. Y. S. 190; see, also, cases infra.

It will be observed that the Legislature of the State of Utah, when it created the industrial commission and the public utilities commission, authorized them to administer oaths, subpoena witnesses, and conduct hearings, and specifically and definitely conferred upon them the right to issue commissions for the taking of depositions, and to use depositions in their proceedings. See section 3081, Comp. Laws Utah 1917; section 4822, subd. 3, Comp. Laws Utah 1917.

From the subsequent action of the Legislature in adopting the Utah Revised Statutes of 1933, it recognized that up to that time this power had not previously been conferred on the department by inserting in title 79, Department of Registration, chapter 1, § 30, a provision authorizing the department to take depositions, with or without a commission, in the same manner and on the same

ground as provided for taking of depositions in actions pending in the district court. It would therefore follow that the board of physicians and surgeons did not have presented to it any competent evidence which the department of registration was authorized to submit to it, upon which it could base its recommendation. It would therefore follow that if there was no proper evidence submitted to the board of physicians upon which it could legally make a recommendation of revocation, that the director of the department of registration would be without jurisdiction to enter any judgment or order, where there is no legal or competent evidence. *Dyment* v. *Board of Medical Examiners,* 93 Cal. App. 65, 268 P. 1073.

It is further urged by the respondent and admitted by the demurrer of the appellant that he (the appellant) did not comply with section 7180, Comp. Laws Utah 1917, in that no showing was made at any time before or at the time of the hearing of any effort to secure the attendance of the witness whose deposition was taken, or to show that she was not within the county. It would appear in this case that if the taking of the deposition is authorized by law, it would be authorized under subdivisions 2 and 3 of section 7178, which provide as follows:

"2. When the witness resides out of the county in which his testimony is to be used;

"3. When the witness is about to leave the county where the action is to be tried, and will probably continue absent when the testimony is required."

With reference to these provisions, it is necessary to refer to section 7180, which provides.

"If the deposition be taken under subs. 2, 3, or 4 of § 7178, proof must be made at the trial that the witness continues absent or infirm, or is dead."

This being so, it is a prerequisite to the proper admission of a deposition that such a showing be made. It would therefore be error to admit a deposition in the absence of a show-

ing that the person offering the deposition has used due diligence to find him, that he could not be found, or that he was not within the reach of the process of the court. Jones on Evidence, vol. 4, § 2019; *Day* v. *Cloke,* 47 Nev. 75, 215 P. 386; *Heinbach* v. *Heinbach,* 262 Mo. 69, 170 S. W. 1143; 18 C. J., § 351, sub-par. 2, p. 739, also section 352.

In this case not only does it appear from the record that there was no showing that it was impracticable to secure the attendance of the witness whose deposition was offered and admitted in evidence, but it affirmatively appears that the appellant and his agent knew that the witness was within the jurisdiction of the department within a very few days prior to the hearing, and knew that the respondent had a subpoena out for the attendance of the witness at the hearing. In view of such a showing, before a deposition could be properly admitted, it was incumbent upon the party offering the deposition to show that the absence of the witness was without his consent and connivance or collusion. 18 C. J., § 353, p. 740.

The further contention is made that the deposition should have been excluded because the witness on cross-examination refused to answer questions. It is the stated rule in this state that depositions may be refused if witnesses refuse to answer material questions. *Hadra* v. *Utah National Bank,* 9 Utah 412, 35 P. 508.

In this case, after the witness stated that she was directed to go to Dr. Moormeister by a girl friend of hers, she was asked to give the name of this girl friend. She was advised by the notary that she did not have to answer this question, and she refused to answer it. With reference to this particular question and answer, while it is proper on cross-examination to test the credibility and to find out if the witness has been influenced in any way, the answer given would only be material for testing the witness' credibility, and perhaps determine the weight to be given her testimony. Whether or not the deposition in such a case should be excluded rests in the sound discretion of the

court, or tribunal before which the deposition is offered. However, this does not mean that it was proper or discretionary on the part of the person taking the deposition to advise the witness whether or not to answer a question. It is not the duty of the person taking the deposition to perform the judicial function of determining the relevancy or the competency of testimony or to advise a witness whether she should answer the question. All he should do is to note the objection, and leave these questions to be determined by the court or tribunal before which the deposition is to be offered. Jones on Evidence, § 1998; *Carpenter* v. *Dame,* 10 Ind. 125. However, the fact that the officer taking the deposition does these things is not grounds for refusal to admit the deposition, unless it appears that the rights of the parties have been materially injured.

It is next urged that the deposition should have been excluded and suppressed because of interlineations and erasures. When the requirements of section 7180, Comp. Laws Utah 1917, are complied with, that is, when the officer taking the deposition encloses it in a wrapper or envelope and seals it and mails it, or delivers the same to the clerk of the tribunal which directs the taking of the deposition, or to some person agreed upon by the parties, the fact alone that interlineations or erasures are made may not be sufficient reason for refusing the deposition (Jones on Evidence, p. 1983, § 1758; 18 C. J. 697), unless there is something further to show that it could have been tampered with by the parties, or others, or some fraud has been committed. In the present case it is alleged that important and material particulars of the testimony were changed by erasures after it was transcribed and typewritten, and that the deposition was not placed in an envelope, sealed and delivered to the clerk of the department, or a person agreed upon by the parties. There is no evidence or allegation to show that these changes were not proper corrections made before or at the time the deposition was signed by the witness. Courts should not defeat the use of

depositions otherwise fairly taken by too nice a distinction of degrees of formality. However, in this case the additional fact that the deposition was not sealed and delivered as provided by statute, would be sufficient to warrant the suppression of the deposition. Jones on Evidence, § 1984; *Henderson* v. *Louisiana & Texas Lumber Co.*, 61 Tex. Civ. App. 136, 128 S. W. 671; *O'Leary* v. *Schoenfeld*, 30 N. D. 374, 152 N. W. 679.

Respondent further contends that there was bias and prejudice on the part of the appellant tribunal and a conspiracy to revoke the license of the respondent, and because of such facts the appellant was biased and prejudiced, and therefore disqualified to conduct said hearing. Nothing is contained in chapter 130, Laws of Utah 1921, creating the department of registration and providing for a hearing for revocation of license, providing for a change of person conducting such hearing where such person is biased and prejudiced. It is therefore fair to assume that it was not within the intention of the Legislature to give a right to change the head of the department in a hearing where bias and prejudice are shown. It is well settled that in a hearing before an inferior court such as a justice's court, it is *error* for the justice's court to conduct a case where he is shown to be disqualified. However, the fact that bias and prejudice exists does not disqualify the justice from *jurisdiction* to proceed. *State* v. *Morgan*, 44 Utah 224, 140 P. 218, Ann. Cas. 1916D, 1279. So in the case of a hearing before the department of registration, bias and prejudice admitted would at most only show that a fair and impartial trial may not be had. The existence of this would not deprive the department from jurisdiction to proceed with the hearing.

It is urged by the appellant in this case that since the head of the department of registration does not act as trier of the fact but merely conducts the hearing, and upon the recommendation of the board of physicians enters an order revoking the license, that the bias and prejudice alleged on

the part of the head of the department would not prejudice the respondent in any way, since the evidence is submitted to the board of physicians and surgeons, upon which it makes recommendations which must either be adopted or set aside by the head of the department of registration. There is no allegation of bias and prejudice against the physicians, nor is there an allegation that the bias and prejudice of the head of the department of registration in any way influenced the recommendations of the board of physicians. The most that could be claimed for the admitted bias and prejudice of the department would be that it might tend to show unfairness or arbitrariness in conducting the proceedings and in presenting the testimony to the examining or might influence it in adopting or rejecting the recommendations of the board of physicians.

It is further urged by the respondent in this case that since the board of examining physicians and surgeons was supposed to act as trier of the facts, and to make its recommendations accordingly, that the members should have been sworn, as jurors are sworn in criminal and civil cases, to try the case in accordance with the testimony submitted. There is nothing in the act creating the department of registration which requires an oath to be given to the board of physicians and surgeons when sitting in a hearing to revoke a license. The only requisite which the statute sets out is that the findings and recommendations of the board must be submitted in writing to the director of the department of registration. The hearing authorized to be conducted by the department should be conducted as nearly as possible with the same decorum and the same attitude of fairness as judicial proceedings are conducted. The hearing contemplates that the party cited to appear may be present and present his side of the case, and be present when the evidence relating to the charge against him is presented. This being so, the same precautions which are used by the courts to secure to a man who is brought before it a fair and impartial trial based upon

the evidence submitted, should be taken by the head of the department in the hearings held before it. While in this particular proceeding, in view of the statute, it may not be error to fail to administer an oath to the board of physicians and surgeons to consider only the evidence submitted to it in the hearing, and to make its recommendations on such evidence, still the person conducting such hearing should either by oath or by instructions, be made to understand that the board's findings, conclusions, and recommendations should be based upon the evidence submitted to it at the hearing and not otherwise.

Respondent's allegation that chapter 130, Laws of Utah 1921, as amended by Chapter 49, Laws of Utah 1923, is unconstitutional, is without foundation, since this court has specifically held the act to be constitutional in the case of *George W. Baker* v. *Department of Registration,* 78 Utah 424, 3 P. (2d) 1082.

The court having reached the conclusion that error has been committed in this case, the next question which arises and which is urged by the appellant in this case is that the errors committed do not warrant injunctive relief, but on the contrary such errors can be cured by appeal to the District Court where a trial de novo would be had, as provided and laid down by this court in the Baker Case, above cited.

The respondent contends that the remedy by appeal is not a plain, speedy, and adequate remedy at law; that this being so, they would be entitled to injunctive relief. Counsel for the respondent urges that after the board of examining physicians has made a recommendation revoking the license of respondent, that the head of the department of registration, under the facts as shown in this case, would unless restrained enter an order revoking the license of the respondent; that such an order revoking the license is in effect a self-executing judgment; that immediately upon entering the order, the respondent's right to practice medicine and surgery would be denied him until the case was finally determined on appeal, which might take several months, or

even years; that this being so, he would be deprived of a valuable property right and suffer irreparable injury, and because of these facts an injunction should lie restraining the head of the department of registration from revoking the respondent's license.

If the respondent were in fact deprived of his right to practice his profession pending an appeal to the courts and a final determination of the case, it unquestionably would be sufficient grounds for a court of equity to interfere and grant an injunction. However, we are of the opinion that respondent's rights can be amply protected through the ordinary course of an appeal. This court has already held in the case of *Baker* v. *Department of Registration,* supra, that under the statute creating the department and providing for hearings, an appeal lies. As no procedure therefor was provided, the court by analogy, so far as applicable, held that the appeal might be taken in the manner as provided by the statutes on appeal from the justice court to the district court. An appeal from the justice court is a trial de novo, so it was held that an appeal from the revocation of a license to the district court is likewise a trial de novo. The general rule is, unless otherwise provided by statute, that an appeal, where the case is triable de novo, vacates the judgment appealed from. 35 C. J. 786, §§ 482, 485, p. 789; 3 C. J. 1261, § 1373.

It will be noted from our statute in the case of an appeal from a judgment or order made by the department of registration revoking a license to the district court, it makes no provision whatsoever for the necessity of giving a supersedeas bond to stay the judgment appealed from. There is no provision in the statute whatever keeping the judgment effective pending the appeal. This being so, the general rule would seem to apply. This would be true, regardless of whether the judgment may be considered as self-executing, or whether it was not, because in the absence of a statute to the contrary, the appeal vacates it. Hence the effect of an appeal from a judgment, or order,

of the department of registration revoking the license, leaves the parties in the same situation with reference to the rights involved as they were prior to the rendition of revocation of license.

Applying the analogy of appeal from the justice court to the district court, we find that section 7517, Comp. Laws Utah 1917, provides that an appeal is taken from the justice court by the service of a notice of appeal, and by giving a cost bond in the sum of $100. It also provides for a stay bond or undertaking only: (a) When the judgment is for the payment of money; (b) for the recovery of specific personal property; (c) the foreclosure of a lien for personal property; (d) the delivery of possession of property. In all other cases, no other undertaking or stay is required, other than the giving of a cost bond of $100. Where a stay bond is required, the effect of the appeal from the judgment leaves the parties in the same situation with reference to the rights involved in the action as they were prior to the rendition of the judgment of the tribunal below. *Mark* v. *Superior Court*, 129 Cal. 1, 61 P. 436, cited and approved by this court in *State* v. *Draney*, 57 Utah 14, 176 P. 767.

The same effect follows in an appeal from a judgment where under the statute the case is such that no stay of proceedings is provided for or required. It therefore follows that the respondent has a plain, speedy, and adequate remedy at law by appeal to the courts, and that the errors committed in the taking of the deposition and the proceedings held in this case can be corrected on appeal to the district court in a trial de novo.

From this analogy of the procedure provided for justice courts, we are of the opinion that there is no kind of a judgment here requiring any stay, and the general rule will apply, that is, in the absence of a statute to the contrary, an appeal from the department of registration to the court where a trial de novo is had, vacates the judgment. So in this case, the respondent could at the time the department of

registration makes the order revoking his license, serve notice of appeal, as is done in justice courts. The service of this notice would automatically vacate the order or judgment entered. That being so, the respondent would, pending the appeal, be free to enjoy his property right of the practice of his profession.

Further, section 7220, Comp. Laws Utah 1917, provides that an action is deemed to be pending from the time of its commencement until its final determination on appeal, or until time for appeal has passed, which means that a judgment may be final for the purpose of an appeal, yet it is not a final determination of the rights of the parties pending appeal.

Since the ruling in the district court and pending the appeal therefrom to this court, the Legislature in adopting the Revised Statutes of Utah 1933 changed the wording of section 3 (f), chap. 49, Laws of Utah 1923, relating to appeals to the courts. This would not affect pending litigation unless it clearly appears from the act that the Legislature intended the change to apply to pending litigation. 5 Cal. Jur. § 144; *In re Benevenuto's Estate*, 183 Cal. 382, 191 P. 678. We, however, in this case do not pass upon the effect, if any, of the change in the wording as it now appears in section 79-1-36 of the Revised Statutes of Utah 1933.

Thus, notwithstanding the errors committed, we nevertheless are of the opinion that the court below erred in overruling the appellant's demurrer and in granting injunctive relief, for the reason that the respondent had an adequate remedy at law by appeal. The case is therefore remanded to the district court, with instructions to enter judgment in accordance with the holding herein.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., did not participate herein.